CAROL JEAN BEAZLEY, Appellant, v. ROBERT
JURVEY DAVIS, Respondent.

No. 8002

January 28, 1976                    545 P.2d 206

---

*John N. Schroeder,* Reno, for Appellant.

*Michael R. Specchio,* Reno, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from an order of the district court denying the petition of appellant, Carol Jean Beazley (formerly Davis), which sought modification of a divorce decree so that Carol would be awarded the custody of the parties' two children: Scott Jurvey Davis, born on March 17, 1972, and Sonja Cherie Davis, born on September 23, 1968.

Carol was granted an uncontested decree of divorce from respondent, Robert Jurvey Davis, on December 15, 1972. The decree awarded custody of the two children to Robert, with reasonable visitation rights to Carol. Both parties remarried. Thereafter, Carol filed the instant petition, seeking custody of the children. After a hearing on the petition, the district judge ordered that the children's custody remain with Robert.[1] It is

---

[1]Since Scott was living with Carol, the court ordered that he be permitted to do so pending the outcome of this appeal.

clear from the record that the court based its ruling on the fact that Sonja and Scott were children of a miscegenous marriage. Carol is a Caucasian; Robert is a Negro.[2] The district judge, after reviewing photographs of the children, decided that their physical characteristics were Negroid and therefore custody should remain with their father. We believe that the court erred in taking the view it did and that therefore we must remand and order a new hearing.

State actions within the meaning of the Fourteenth Amendment include not only the acts of a legislature, but also the actions of the State's judicial officers. Therefore, the strict standard used to test the constitutionality of legislation classifying persons according to race is the same standard which must be applied to State judicial officers' actions which classify persons according to race. In the absence of a showing that race in custody proceedings is necessary to the accomplishment of a permissible State policy, such a consideration would constitute an impermissible discrimination in violation of the Fourteenth Amendment. Commonwealth ex rel. Lucas v. Kreischer, 299 A.2d 243 (Pa. 1973). The United States Supreme Court, in McLaughlin v. Florida, 379 U.S. 184, 192 (1964), stated that the central purpose of the Fourteenth Amendment was to eliminate racial discrimination emanating from official sources in the States. This strong policy renders void classifications "constitutionally suspect" [Bolling v. Sharpe, 347 U.S. 497, 499 (1954)] and subject to the "most rigid scrutiny" [Korematsu v. United States, 323 U.S. 214, 216 (1944)].

---

[2] The court's ruling provided in part:

"Plaintiff's Motion for Change in Custody of the two minor children, SONJA CHERIE DAVIS and SCOTT JURVEY DAVIS, is denied.

". . . [M]ost importantly, the children involved are the results of a miscegenous marriage, between a caucasion and negro, and the children clearly show negroid physical characteristics.

"Both parties hereto have been remarried and Plaintiff-movant, who is caucasian, has remarried a caucasian. It must be reasonably assumed that Plaintiff and her husband will have caucasian children; and to place the children within this setting can do nothing less than eventually cause emotional trauma for them.

"The Defendant has likewise remarried to a female caucasian, and again it can be reasonably assumed that children borne of this marriage would have similar physical characteristics from this second miscegenous marriage, into which environment the children in question would fit far more comfortably and be less susceptible to emotional trauma during their formative years."

In the instant case, the lower court indirectly restricted the right of the natural mother to be considered as the proper parent to have custody of her children, because of their "[racial] physical characteristics." Additionally, and for the same reasons, the children, Sonja and Scott, were denied the benefit of an unprejudiced hearing focused solely on an inquiry into what custody order would be in their best interest and welfare.

We agree with the words of the Supreme Court of Pennsylvania appearing in Commonwealth ex rel. Lucas v. Kreischer, *supra,* 299 A.2d at 246, that " 'in a multiracial society such as ours racial prejudice and tension are inevitable. If . . . children are raised in a happy and stable home, they will be able to cope with prejudice and hopefully learn that people are unique individuals who should be judged as such.' "

For these reasons, we reverse and remand the case for a new hearing in the court below.