Commonwealth ex rel. Johnson, Appellant, *v.*
Pinder.

Argued June 9, 1970. Before WRIGHT, P. J., WAT-
KINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and
CERCONE, JJ.

*Benjamin Levin,* for appellant.

*Hardy Williams,* for Commonwealth, appellee.

OPINION BY HOFFMAN, J., September 18, 1970:

This is an appeal by Norman Earl Johnson from the denial of custody of his 19 month old son. The court awarded the child's custody to Mrs. Hattie Pinder, the child's maternal grandmother, on the ground that the child's interests would best be served if he remained with her.

Appellant and his first wife, the child's mother, were married on September 9, 1967. After the honeymoon, appellant returned to Carbondale, Illinois where he had been attending college. He worked there for several months for the funds necessary to resume his studies in March of 1968. Appellant's wife remained in Philadelphia for a short period after their honeymoon and then joined her husband in Illinois. She returned to Philadelphia in the early part of 1968 because she was pregnant and wanted to be near her mother, appellee herein. The child was born in May of 1968.

Mr. Johnson testified that when the child was born, he flew home and remained three or four days with his wife. He then returned to school in Illinois. On September 9, 1968, appellant's wife committed suicide. Appellant flew to Philadelphia as soon as he was advised of his wife's death and again saw his child. The third and last time that he saw his child was in September of 1969 when he stood outside appellee's door and watched her take the baby to a babysitter. Appellant further testified that on other occasions, when he advised appellee of his intention to come home to see his son, he was told that the child was out of town. He also stated that he made some 15 efforts to see his child.

Appellant was remarried on July 5, 1969. He and his wife currently reside in Carbondale, Illinois, in a two bedroom apartment, and both were to have graduated from school in June and August 1970 respectively. They plan to live in a suburban area of Chicago where appellant will become a guidance counsellor and his wife a grade school teacher. Appellant's wife stated that she desires to share in the care of the child.

Mrs. Pinder, the child's grandmother, testified that appellant never wrote or called his first wife. She objected to relinquishing the child because, in her opinion, appellant had demonstrated no pride or responsibility towards the child. She testified that appellant's first wife, her daughter, did not leave Philadelphia after the marriage, which statement the court found to be untrue. Appellee further testified that when she resumed her seasonal employment, she sent the child to relatives in North Carolina. Indeed, at the time of the hearing in the lower court, the child was in North Carolina. Appellee also testified that she planned to build a home in North Carloina and would remarry after she obtained a divorce from her present husband.

The paramount consideration in child custody disputes, to which all other factors are subordinate, is the child's welfare. Presumptively, the child's welfare is best served when the child is in the custody of its parent or parents, and prima facie, a parent is entitled to the custody of his or her child. In a contest between a natural father and a nonparent, the father's right to the custody of his child is held to be so moving and urgent that it is forfeitable only by misconduct or other factors which substantially affect the child's welfare. *Commonwealth ex rel. Sabath v. Mendelson,* 187 Pa. Superior Ct. 73, 143 A. 2d 665 (1958) ; *Commonwealth ex rel. Insalaco v. Delconte,* 201 Pa. Superior Ct. 354, 192 A. 2d 750 (1963), aff'd, 413 Pa. 221, 196 A. 2d 353 (1964).

In cases dealing with the custody of children, our Court, on appeal, is required in the exercise of an independent judgment based on the evidence, to consider the testimony, and make such order on the merits of the case as to do right and justice. *Commonwealth ex rel. Cooper v. Cooper,* 167 Pa. Superior Ct. 492, 75 A. 2d 609 (1950) ; *Brown v. Brown,* 206 Pa. Superior Ct. 439, 213 A. 2d 395 (1965). Act of July 11, 1917, P. L. 817, §1, 12 P.S. §1874.

In reviewing the facts of this case, we are of the opinion that the court was without sufficient basis on which to overcome the strong presumption that a child should be given over to the custody of his natural parent.

The record clearly indicated that the father was not indifferent to the welfare of this child, nor did he lack interest and concern. The court made much of his failure to make frequent trips to Philadelphia, but the fact remains that despite an obviously limited budget he did rush home on the occasions of his child's birth and his wife's death. It is clear that out of concern for his child, the father made arrangements with a Mrs. Lambright to care for his child. His failure to visit the child more often or to send much money to him, was, in our opinion, based on his lack of finances and his desire to complete his education, rather than on a lack of interest. From reading the record in this case, we are convinced that the child can best be reared by his natural father and the new wife, both of whom are recent college graduates entering fields dealing with child education and guidance. There is nothing in the record which suggests otherwise.

Moreover, we believe that the court did not properly consider the quality of the home provided by appellee for the child. The record indicates that after the death of the child's mother, the child remained with the

grandmother for seven months; thereafter, the child was placed with relatives in North Carolina because the grandmother resumed her seasonal employment. Moreover, the grandmother testified at the time of the hearing, that the child was in North Carolina, but that she intended to bring the baby back to Philadelphia in December when her employment would cease. This would clearly not constitute the consistent treatment and continuing security of a better home life which one would expect for a young child.

The court at the conclusion of its opinion appears to base its decision on the following statement: "Mr. Johnson has seen his child briefly on two, or perhaps three occasions—at birth perhaps, at its mother's funeral and at a distance in September, 1969. His bride of five months had not seen the child at all. They are both concerned with five time-consuming essentials at this time—adjusting to a new marriage, working toward graduation, working on their respective jobs, securing future employment and relocating. Moreover, Mr. Johnson has expressed little, if any, responsibility toward the child in terms of support, presents, or communications of any type. He has given priority to his interests in school, cars, etc., above even the basic needs of his son. In all the circumstances, the child's best interest lay in its being in the custody and care of appellee." We find this statement to be an oversimplification of the facts. It is true that appellant has only recently remarried. However, at the time of the appeal before us the marriage had already been in effect for one full year. Many young couples with children are simultaneously adjusting to a new marriage, working toward graduation, working on their respective jobs, and relocating. This is not an unusual situation nor one that warrants any concern. On the other hand, the court failed to indicate that the grandmother, who

is now a woman in her forties, is also to be remarried as soon as she obtains a divorce. This should be of concern, in light of her circumstances and age.

The lower court, in seeking to overcome the presumption in favor of the natural parent, cites four cases. In two of these, *Commonwealth ex rel. Shroad v. Smith,* 180 Pa. Superior Ct. 445, 119 A. 2d 620 (1956) and *Commonwealth ex rel. McDonald v. McDonald,* 183 Pa. Superior Ct. 411, 132 A. 2d 710 (1957), the children involved were 11 years old. They had been provided with excellent care and stable environments for a substantial period of time. In both cases, the children expressed a strong desire to remain with the only emotional parents they had known. The court also cited *Commonwealth ex rel. Cleary v. Weaver,* 14 Pa. D. & C. 2d 715, aff'd, 188 Pa. Superior Ct. 197 (1958) and *Commonwealth ex rel. Newel v. Mason,* 186 Pa. Superior Ct. 128, 140 A. 2d 365 (1958), where the children's ages were 9 and 6 respectively. Again, these opinions stressed the excellent care which the children had received from a nonparent for a substantial number of years. The above four cases were specifically distinguished by our court in *Commonwealth ex rel. Sabath v. Mendelson,* supra, where the child had not been in the custody of the nonparent for an extended period of years. Custody in that case was awarded to the natural father, although he had seen the child once in seven years and had married out of the faith in which the child had been reared. All of these cases, however, are clearly distinguishable from the instant case which involves a 19 month old infant. The court states that its order applies only to the present time. It is quite clear, however, that the transition from one home to another at this tender age would present a minimal risk to the child's emotional development. Such a risk, however, would be for the benefit of the

child, as it would provide a home more closely resembling a normal family unit. On the other hand, the longer the child remains with the grandmother, the difficulties in any future transition will involve a substantially greater risk of serious emotional problems for the child.

For the reasons stated herein, the order of the lower court is reversed and custody of the child is awarded to appellant.

WRIGHT, P. J., would affirm the order below.