## Janflone, Appellant, *v.* Janflone.

Argued April 12, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Sanford S. Finder,* for appellant.

*Wray G. Zelt, III,* for appellee.

OPINION BY CERCONE, J., June 22, 1971:

This is an appeal from the lower court's award of custody to the father of two minor male children, aged 8 and 5. The mother had petitioned for their custody but the court below, though finding the parents both "fit and proper persons to raise these two children so long as they can maintain adequate and proper living quarters" decreed that the boys stay with their father with whom they had been living since their mother had left the home in December 1969. It was the court's determination that there were compelling reasons requiring the award of custody to the father rather than the mother. The court enumerated those reasons as being: (1) the mother's lack of interest in the children, as displayed by her conduct in leaving them with their father on December 17, 1969 and making no effort to secure their custody until June 18, 1970, after their father sued her for divorce, even though she became gainfully employed on March 25, 1970. In fact, at the time of her leaving in December 1969, the youngest son accepted her offer to take him with her and stood ready with coat on at the door, but she laughed at him and walked out. Since the separation, the mother admitted-

ly is keeping company with a married man and visitation with her children is shared in the company of this man. On the other hand the record shows a devoted father who spends much time with and gives much attention to his children, his work as a guitar teacher allowing him a flexibility of schedule for attendance to the children's needs; (2) the home to which the mother intends to bring the children is her mother's four-bedroom home in which five people already live and which had been available to her long before she sought custody. The accommodations of the father are more comfortable and better suited and better located for the upbringing of growing boys; (3) the mother had permitted the children to be enrolled in a church and church school of the father's choosing where they have been attending many months, and the mother, though now critical of the religious training the children receive at that school and from their father, which consists for the most part of Bible reading, has never "checked" into what she believes would be the "right church" for them and has made no arrangements for any substitute religious training for them. The mother is not a member of any church and would not participate in any of the religious activities or training that she would choose for her children; and (4) to take these children from the school they are now attending and to send them to another school could create difficulty and perhaps irreparable harm to the children.

The court was also influenced in its determination by its interview of the older child who, as reported in the Opinion, "stated clearly that he wanted to continue to live with his father, even though he loved his mother and wanted to continue to see her."

We have devoted considerable study to the correctness of the lower court's decision and can find no reason in the record or in law that requires us to reverse.

Merely because the court had found the mother fit did not require a determination of custody in her favor: *Com. ex rel. Hough v. Hough*, 178 Pa. Superior Ct. 484 (1955). The paramount question in determining the custody of children is always the welfare of the children: *Com. ex rel. Dinsmore v. Dinsmore*, 198 Pa. Superior Ct. 480. As stated in *Com. ex rel. McNamee v. Jackson*, 183 Pa. Superior Ct. 522, at 525 (1957): "It is basic and fundamental that the paramount consideration is the welfare of the children and that all other considerations, including the rights of parents, are subordinate to the children's physical, intellectual, moral, spiritual and emotional well being."

In the instant case, the court below, which had the opportunity of seeing and hearing the witnesses, judging their credibility, seeing and talking with the oldest boy, was in a much better position than this court to determine what is best for the welfare of the children: *Commonwealth ex rel. Mitchell v. Mitchell*, 186 Pa. Superior Ct. 347 (1958). The weight to be given to the oldest boy's preference for his father, even though he loved his mother and wanted to continue to see her, was for the court's determination. As stated in *Com. ex rel. Doberstein v. Doberstein*, 201 Pa. Superior Ct. 102, at page 106 (1963): "It surely should remain in the discretion of President Judge Forrest of the court below, who had the opportunity of seeing and hearing the minor child; of judging her intelligence and age development; and by so doing, being in the best position to determine the weight her preference should be given."

Our study of the record leads us to the same conclusion reached by this court in the *Doberstein* case, supra: "We have carefully reviewed the facts in this record and are satisfied that the decision of the court below was based on the sober judgment that the best

interests of these children were served by remaining with their father; and that in deciding this, the established custody guides of fitness of the parties, preference of the minors, the children of tender years policy and the policy of keeping the family together, were all carefully weighed and balanced against the paramount question of the welfare of the children." "We find no error of law requiring us to disturb the decision reached by the lower court and accordingly, the order is affirmed.