Commonwealth ex rel. Lucas, Appellant, *v.* Kreischer.

Argued November 10, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Gailey C. Keller*, with him *Smith, Eves and Keller*, for appellant.

*Robert E. Bull*, for appellee.

*Nathaniel R. Jones* and *James I. Meyerson*, attorneys for amicus curiae.

OPINION BY MR. JUSTICE EAGEN, January 19, 1973:

This action involves the custody of three children, ages nine, eight and six years,[1] born of the marriage of Zane B. Kreischer and his then wife, Bonita. The Court of Common Pleas of Columbia County, after an evidentiary hearing, awarded custody to the father with visitation rights to the mother. On appeal the Superior Court affirmed without opinion. Judge HOFFMAN filed a dissenting opinion in which Judges SPAULDING and CERCONE joined. See 221 Pa. Superior Ct. 196, 289 A. 2d 202 (1972). We granted allocatur and now reverse.

The facts are not in dispute and may be summarized as follows:

The litigants, a Caucasian couple, separated in January 1969, while living in Downingtown, Chester County, Pennsylvania. Immediately following the separation, the three children remained with the mother for about three and one-half weeks, but were then taken to

---

[1] These were the ages of the children at the time of the hearing in the trial court in July 1971.

live temporarily with the maternal grandparents in Columbia County, because the mother experienced difficulty in establishing a suitable residence. In March 1969, following an aborted hearing in an action for custody in Chester County, the parties agreed that the children would be placed in the custody of the paternal grandparents, also residents of Columbia County. In May 1969, the children took up residence with the father in a house trailer in Columbia County.

In September 1969, the father phoned the mother and requested that she take the children to live with her, which she did. At the time, she was sharing an apartment in Willow Grove, Montgomery County, with Leroy S. Lucas, a black man. The parties were divorced in January 1970 and shortly thereafter the father married a Caucasian woman. In June 1970, the mother married Lucas.

From September 1969 until June 1970, the father made only two attempts to see the children. On June 13, 1970, with permission of the mother he took the children to his residence for a week's visit. He then refused to give up custody and the mother instituted this action.

The father and his present wife now reside in Berwick, Columbia County, in a house they own. Both are employed and a fifteen-year-old female serves as baby sitter during their working hours.

The mother and her present husband live in a rented two-room apartment in Willow Grove. Both are employed on the same shift in an industrial plant. If the children are returned to the mother's custody, arrangements to rent a larger apartment will be effected.

The trial court found that the mother and her present husband "are fit persons to have custody of the children", but concluded that because of the physical character and rural location of the residence of the father, along with the possibility that the children

would be the victims of the "almost universal prejudice and intolerance of interracial marriage", the children's interests would be best served by continuing to reside with the father.

In its opinion, the court stated that the benefit of geographical location is a "highly controversial issue, . . ., and is not conclusive one way or the other." The basic reason for the court's ruling in granting custody to the father was the existence of the interracial marriage of the mother and the possible detriment that might result to the children from living with the mother under such circumstances.

In Pennsylvania, supported by the wisdom of the ages, it has long been the rule that in the absence of compelling reasons to the contrary, a mother has the right to the custody of her children over any other person, particularly so, where the children are of tender years. See *Commonwealth ex rel. Fox v. Fox*, 216 Pa. Superior Ct. 11, 260 A. 2d 470 (1969) ; *Commonwealth ex rel. Kraus v. Kraus*, 185 Pa. Superior Ct. 167, 138 A. 2d 225 (1958) ; and *Commonwealth v. Addicks*, 5 Binn. 520 (1813). In fact, that the best interests of children of tender years will be best served under a mother's guidance and control is one of the strongest presumptions in the law. *Commonwealth ex rel. Logue v. Logue*, 194 Pa. Superior Ct. 210, 166 A. 2d 60 (1960). In the instant case, the record is completely barren of any evidence that the children here involved will suffer from living with the mother under the existing circumstances. Significantly, the children have evidenced no ill will towards the mother or concern over her second marriage, and no social problems, such as bias or prejudice, ensued while they were under her care from September 1969 to June 1970. The real issue posed by this appeal is, whether a subsequent interracial marriage by the mother, in and of itself, is such a compell-

ing reason as will warrant a court in denying her the custody of her children. We rule it is not.

As noted by Judge HOFFMAN in his dissenting opinion below, there has been a marked increase in the United States in recent years of interracial marriages and trans-racial adoptions, and sociological studies establish that children raised in a home consisting of a father and mother who are of different races do not suffer from this circumstance. Cf. *Stingley v. Wesch,* 77 Ill. App. 2d 472, 222 N.E. 2d 505 (1966) ; *Potter v. Potter,* 372 Michigan 637, 127 N.W. 2d 320 (1964) ; Mixed Race Adoptions, The Open Door Society First International Conference, Address of Mr. Clayton H. Hagen, Supervisor, Adoption Unit, Lutheran Social Service of Minnesota, 1970. We agree wholeheartedly with Judge HOFFMAN's statement that "in a multiracial society such as ours racial prejudice and tension are inevitable. If . . . children are raised in a happy and stable home, they will be able to cope with prejudice and hopefully learn that people are unique individuals who should be judged as such."

Since there is no compelling reason in this record why the mother should be denied custody, the rulings of the courts below were in error. After the mother has established living quarters adequate and suitable for a family of five, custody should be awarded to her with liberal visitation rights to the father.

The orders of the courts below are reversed, and the record is remanded to the court of original jurisdiction with directions to proceed consonantly with this opinion.

Mr. Justice POMEROY and Mr. Justice MANDERINO concur in the result.