Carlisle Appeal.

Argued June 15, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Edgar B. Bayley,* with him *Arnold, Slike & Bayley,* for appellant.

*Wayne F. Shade,* with him *Martson and Snelbaker,* for appellee.

OPINION BY CERCONE, J., September 19, 1973:
This is an appeal from a child custody order of the Court of Common Pleas of Cumberland County. The parents involved in this custody action were separated in June of 1971 and were divorced on August 8, 1972. Five children were born of this union: Carshall, age 20, a third year student at Dickinson College, Gregory 17, Michael 13, James 12 and Michele 10. The lower court action, however, only involved Michael and James. The two oldest boys live with their father, Mr. Carlisle who has remarried and lives in the family home along with his new wife and her two daughters, age 12 and 9. Mr. Carlisle, age 50, is a retired military officer currently employed as a civil servant at the New Cumberland Army Depot. The three younger children live with their mother, Mrs. Carlisle in an apartment facility also in Cumberland County. Mrs. Carlisle, age 53, is a registered nurse, presently employed in a local dress shop. She has not remarried.

This proceeding was initiated by Mr. Carlisle seeking custody of Michael and James. The lower court ordered a transfer of permanent custody of said minor children to their father. Compliance with this order has been suspended pending the decision of this appeal. Various factors bearing on the question of custody, were raised by both parties and entertained by the court below. The central and controlling question, however, is whether the court below abused its discretion in sub-

ordinating the tender years doctrine in favor of the stated preference of the children to be placed with their natural father.

It is true that a mother has a prima facie right to the care, custody and companionship of a child of tender years where no compelling reason appears to the contrary. This has been the general practice in Pennsylvania ever since the case of *Com. v. Addicks*, 5 Binney 520, 1813. But merely finding the mother fit,[1] where the children of tender years are concerned, does not per se require a determination in the mother's favor. The paramount concern must be for a result that is in the best interest of the children involved. *Cochran Appeal*, 394 Pa. 162, 145 A. 2d 857 (1958). Thus, although the presumption in favor of a mother's custody of children of tender years is well established, it must give way in certain circumstances. *Clair Appeal*, 219 Pa. Superior Ct. 436 (1971). As our court stated in *Com. ex rel. Bender v. Bender*, 197 Pa. Superior Ct. 397, 401, 178 A. 2d 779 (1962) (a case involving two children aged 9 and 11): "[A]s children grow older, less weight must be given to the tender years doctrine and more weight must be given to the preference of the children."

At the time of the custody hearing in the instant case, the two boys involved, Michael and James, were 13 and 12 years old respectively.[2] While they might still be classified as of tender years, they have reached the upper limits of that classification.[3] The trial judge below found both boys capable of making an intelligent choice by their testimony expressing preference to live

[1] There appears no dispute between the parties as to their both being fit parents.

[2] At the present time they would each be one year older.

[3] A classification of a child as of tender years, extends to approximately age 14. *Com. ex rel. Skurat v. Gearhart*, 178 Pa. Superior Ct. 245, 115 A. 2d 395 (1955).

with their father. *Com. ex rel. Morales v. Morales*, 222 Pa. Superior Ct. 373, 294 A. 2d 782 (1972). Without more being said, the lower court's decision could be sustained on the basis that the boys stated a preference to live with their father which, standing alone, outweighed the tender years doctrine.[4] *Williams v. Williams*, 223 Pa. Superior Ct. 29, 32 (1972), *Clair Appeal*, supra.

While we agree with appellant that written reports supplied to the lower court by Dr. Stacks, a staff psychiatrist at the special education unit which James attends, should have been excluded,[5] we do not agree that their improper admission requires a reversal of this case. In view of our determination that the court's decision could be sustained on the independent ground of the boys' preference, the improper admission of these reports amounts to only harmless error. The lower court, however, did not base its decision solely on the preference issue. Other factors were taken into consideration and are set forth in the lower court's opinion in further support of its custody award to the father. The lower court found, "On examination by the court, James specifically complained of his mother's propensity to 'move around,' referring to Elizabeth Carlisle's

---

[4] This, of course, includes the prerequisite that other basic factors having a bearing on custody have been considered and would justify an award in favor of either parent (i.e., both parents being fit and able to provide a proper environment for the child). The stated preference of the child involved, could then be the deciding factor, "standing alone," as to which parent will be awarded custody.

[5] The reports were of a hearsay nature since Dr. Stacks was not present in court to state his qualifications and give his testimony subject to cross-examination. *Jones Appeal*, 449 Pa. 543, 551, 297 A. 2d 117 (1972). Even if properly presented he himself admits, in his cover letter to the court, that he lacks sufficient knowledge upon which to base an expert opinion. *Com. ex rel. Hickey v. Hickey*, 213 Pa. Superior Ct. 349, 354 (1968).

frequent attempts to relocate in another state. Both boys expressed a desire to live with their father, Carshall, Jr., in the home which the family had occupied prior to the parents' separation . . . additional testimony by the parties to this suit indicates that both boys have been living under the threat of relocation since May of 1972, that they are reminded of this when they misbehave, and that, on occasion, respondent has viewed this as a means of enforcing compliance with her possessive control over the boys. The effect of this has been to deprive the boys of the stability which home life should afford them. . . . [James] apparently is a boy who benefits more from the stability and guidance of the older male figure in his father's home than from the uncertain environment of his mother's apartment. . . . Since petitioner's remarriage there is a totality of parental influence in that home. Older, more successful, brothers are available to provide companionship and guidance. The physical accommodations are both desirable and permanent."

The lower court had the opportunity of observing the witnesses and judging their credibility. It interviewed the boys as to their preference and determined the weight to be given their testimony. It was in a much better position than this court to determine what is best for the welfare of these children. *Janflone v. Janflone*, 219 Pa. Superior Ct. 194 (1971), *Com. ex rel. Mitchell v. Mitchell*, 186 Pa. Superior Ct. 347 (1958). Accordingly, we arrive at the same conclusion as was reached by this court in *Doberstein v. Doberstein*, 201 Pa. Superior Ct. 102, 106 (1963) wherein we stated "We have carefully reviewed the facts in this record and are satisfied that the decision of the court below was based on the sober judgment that the best interest of these children were served by remaining with their father; and that in deciding this, the established custody guides of fitness of the parties, preference of the minors, the

children of tender years policy and the policy of keeping the family together, were all carefully weighed and balanced against the paramount question of the welfare of the children." We find no error of law or abuse in discretion requiring us to disturb the decision reached by the court below.

Order affirmed.