Commonwealth ex rel. Pruss, Appellant, *v.* Pruss.

248

Submitted March 17, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Mary Bell Hammerman,* for appellant.

*Charles W. Gross,* for appellee.

OPINION BY PRICE, J., September 22, 1975:

Appellant, Paul Pruss, and Joanne Pruss, appellee, were married on April 24, 1965. Two sons were born of the marriage, Karl John in 1965 and Marc Erich in 1967.

The parties were separated in June of 1973. Both children have resided with their mother since the parties separated, subject to visitation rights of the father. Mr. Pruss' visitation rights and the custody and support of the children were the subject of an order of the Court of Common Pleas of Philadelphia County entered on January 3, 1974, and modified by the agreement of the parties on January 30, 1974.

Mr. and Mrs. Pruss were divorced on March 14, 1974. At that time, appellant instituted a habeas corpus petition seeking custody of his sons. Two hearings were held on the petition. Following the latter, on September 4, 1974, the court denied the petition for custody. From that denial, appellant has brought this appeal.

In reviewing an award of custody, this court must review all the evidence, bearing in mind the best interests and welfare of the children. *Davidyan v. Davidyan*, 230 Pa. Superior Ct. 599, 327 A.2d 145 (1974) ; *Auman v. Eash*, 228 Pa. Superior Ct. 242, 323 A.2d 94 (1974) ; *Commonwealth ex rel. Morales v. Morales*, 222 Pa. Superior Ct. 373, 294 A.2d 782 (1972). The best interests of the children are not limited to physical well-being, but include moral, intellectual, and spiritual welfare. *Commonwealth ex rel. Holschuh v. Holland-Moritz*, 448 Pa. 437, 292 A.2d 380 (1972). Where the lower court has made a finding of fact based upon competent evidence, we will not nullify that decision. *Auman v. Eash, supra*. We must accept that court's findings in matters of the credibility of witnesses and the weight to be accorded their testimony. *Commonwealth ex rel. Gifford v. Miller*, 213 Pa. Superior Ct. 269, 248 A.2d 63 (1968).

Applying these legal principles to the instant case, we find that the testimony adduced at the hearings on the petition portrayed Paul Pruss as a father who is concerned about the welfare of his children, but who is very temperamental. His violent temper caused several interruptions in the proceedings which required the admoni-

tions of the lower court to restore order. Moreover, appellant was non-responsive to many questions asked of him, and continually attempted to act as his own advocate although his attorney was present to represent his interests.

During the cross-examination of Mr. Pruss, an incident indicative of his attitude occurred:

"Q. Isn't it true that a week ago, Sunday, during their visitation, when you had visitation, your wife had to resort to the police department to regain custody of the children?

A. Now, listen here, counsel, I am going to tell you something —

THE COURT: Mr. Pruss, you are here with a lawyer to plead your case. There is only a question of custody here. I am not going to sit here and hear you argue with counsel. If I do that, we would take a week on every case. A lot of things will depend on how I feel about this case. How can I be fair and just, if I cannot hear the case? Just answer the questions as you are asked them.

BY MR. GROSS:

Q. Isn't it true that your wife had to go to the police department to regain custody of the children?

A. Not really.

Q. Did you employ a detective two weeks ago?

A. I have employed detectives.

THE COURT: I am not satisfied with that answer 'Not really.'

THE WITNESS: I took a detective friend of mine to my house.

BY MR. GROSS:

Q. Were the police required, in order for your wife to regain custody of the children, two weeks ago?

A. Well, let's just say that —

THE COURT: I don't want to hear that.

THE WITNESS: I was late in coming back.

BY THE COURT:

Q. I want to know the involvement of the police department, if any, was there or was there not?

A. Yes, she got them.

Q. Were the police at your house?

A. Yes, because I was late.

BY MR. GROSS:

Q. What time did you return the children?

A. 9:30.

Q. What time should they have been returned?

A. 7:00 o'clock.

Q. Do you know if your wife came to your house to pick the children up?

A. No, I don't know that.

Q. Were you there?

A. No.

Q. Had you been advised to hold onto these children by anyone?

A. I don't recall.

Q. That was just two and a half weeks ago.

A. I have got a bad memory." (NT 25-28)

A clinical psychologist who had administered a battery of tests to Mr. Pruss was called to testify. He stated that, in his opinion reached after a consultation with Mr. Pruss and based on the test results, Mr. Pruss was definitely interested in the welfare of his children. However, in the doctor's opinion, Mr. Pruss had several personality characteristics which the court believed would not be conducive to providing a healthy atmosphere for his children. For example, the doctor stated that the father was a whining, complaining person who had a pessimistic outlook. He was found to be markedly restless, anxious, egocentric, and in need of psychological counseling. The psychologist also stated that the children lacked maturity and emotional stability, a condition which the hearing judge determined would be aggravated should the father be awarded custody.

Further testimony revealed that Joanne Pruss also had a great interest in the welfare of the children. Mrs. Pruss was shown to have provided an adequate home for her children. Moreover, in order to improve her living standard and provide a better atmosphere for her chil-den, Mrs. Pruss had recently acquired a position as an operating room nurse at a hospital in Weehawkin, New Jersey. Her new job would increase her salary from $5,000 to $9,800 plus overtime yearly, and would enable her to move from a one-bedroom apartment into a three-bedroom house.

Eight-year-old Karl Pruss, in response to *in camera* questioning by the hearing judge and in the presence of counsel, stated that his mother took good care of him, fed him and clothed him well, kept him clean, and helped him with his homework. Karl said he did not know whether he preferred to live with his mother or with his father.

Six-year-old Marc Pruss indicated a preference for living with his father because "we could go places a lot." (NT 66) He stated, however, that his mother took him places "sometimes." Marc also told the judge that he did not like the apartment he lived in but that he might enjoy the new house.

The lower court, after hearing all the testimony and soliciting the opinions of the children themselves, determined that it was in their best interest to grant custody of Karl and Marc to Mrs. Pruss.

In reaching his decision, the hearing judge considered among other things, the father's temper, the mother's ability to provide a good home and adequate income, the desires of the children, and the tender years doctrine. That the hearing judge relied upon the tender years doctrine is not fatal to his decision. In *Davidyan v. Davidyan, supra,* we indicated that the age of young children is a factor which the lower court may consider in awarding custody, particularly in circumstances where both parents

are exceptionally well suited to rearing their children. However, the doctrine should not be given undue emphasis. In the instant case, as in *Davidyan,* the lower court properly based its decision upon all the evidence. *Cf. Commonwealth ex rel. Parikh v. Parikh,* 449 Pa. 105, 296 A.2d 625 (1972).

Moreover, the preference of the children is one factor to be considered in awarding custody. But the opinion of a six-year-old is not binding upon the court. And where, as in the instant case, the court takes all the testimony into account and determines that custody should be with the mother, we will not disturb that finding.

Appellant also seeks to inject an affidavit of changed circumstances into this case. However, the issue is not properly before us, as the alleged changes occurred after the order, which is the subject of this appeal, was entered on September 4, 1974. To recognize this argument and consider these changed circumstances on this appeal would be to defeat finality in any litigation involving the family relationship. *Davidyan v. Davidyan, supra.*

Our review of the record satisfies us that the hearing judge gave careful consideration to all the evidence, properly weighed the interests of the children as between the parties, and reached a conclusion supported by justice and law.

Order affirmed.