369 A.2d 821
COMMONWEALTH ex rel. Candice A.
CUTLER, Appellant,

v.

Harold K. CUTLER, Jr.

Superior Court of Pennsylvania.

Argued June 18, 1976.

Decided Feb. 18, 1977.

John C. Herrold, York, with him Lewis Harrison Markowitz, York, for appellant.

Raymond R. Smith, York, submitted a brief for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

This is an appeal from an order denying custody of two minor children to appellant-mother. We affirm.

Appellant and appellee-father were married on February 3, 1968. In June of 1974, appellant left her husband and two minor children. Appellee was granted a divorce on August 19, 1974. Appellant subsequently sought to gain custody of the children. Upon her petition, a writ of habeas corpus was issued and a hearing was held on September 23, 1975. In its order, filed October 15, 1975, the lower court held that the children's interests would be best served by awarding custody to the father.

In reaching its decision, the lower court found that both parents were "fit and proper" in the sense that either could provide for the children. As previously noted, however, the court held that the "best interests" of the

children would be served by retaining custody in the father. Appellant now raises the following issue: "When both parents are determined to be fit, does the 'tender years' doctrine require custody be awarded to the mother?" Clearly we must answer this question in the negative.

■■ The primary consideration in any child custody proceeding is to determine the best interest of the child. *Commonwealth ex rel. Parikh v. Parikh*, 449 Pa. 105, 296 A.2d 625 (1972); *Commonwealth ex rel. Davidyan v. Davidyan*, 230 Pa.Super. 599, 327 A.2d 145 (1974) *citing* the Act of June 26, 1895, P.L. 316, § 2 (48 P.S. § 92). "The best interests and welfare of a child which includes its physical, intellectual, moral and spiritual well being, and all other considerations are subordinate." *Commonwealth ex rel. Holschuh v. Holland-Moritz*, 448 Pa. 437, 444, 292 A.2d 380, 383 (1972); *See also Commonwealth ex rel. Pruss v. Pruss*, 236 Pa.Super. 247, 344 A.2d 509 (1975). Our recent development of the "tender years" doctrine demonstrates the pervasiveness of the above maxims. As Judge Spaeth wrote in *Commonwealth ex rel. Grillo v. Shuster*, 226 Pa.Super. 229, 312 A.2d 58 (1973),

"[t]he 'tender years' presumption does not reflect or derive from the mother's 'right', whether that right be characterized as 'prima facie' or otherwise. It is procedural only. One party or the other must have the burden of proof. If . . . the hearing judge finds that the *interests of the child* would be equally served by granting custody to either litigant, custody should be awarded to the child's natural mother." (emphasis added) *Id*. at 235–36, 312 A.2d at 62.

■ Although the fitness of the parent is an important factor in a determination of the best interest of a child, a finding that both parents are equally fit is not equivalent to a finding that the best interest of the child would be equally served with either parent. This court

has previously held, in *Commonwealth ex rel. Horisk v. Horisk,* 90 Pa.Super. 400 (1927), that a father can be awarded custody even though both parents are found to be "fit and proper," as long as the child's welfare would be best served by such a disposition. *See also, Carlisle Appeal,* 225 Pa.Super. 181, 310 A.2d 280 (1973). A father need not prove that the mother is unfit in order to obtain an award of custody. *Janflone v. Janflone,* 219 Pa.Super. 194, 280 A.2d 423 (1971). In the instant case, the lower court held that the children's best interests would be served by awarding custody to the appellee.

The primary question in this case is whether the lower court erred in its determination that the children's welfare will be best served by an award of custody to the father. To analyze this issue, it is necessary to set forth the facts of record.

Appellant is gainfully employed, earning $90 to $100 per week after taxes. The children would live with their mother and grandparents in a new home on the grandparents' 125 acre farm. Appellant's mother and father appear eager to have the children join their household. Since appellant and both grandparents work during the day, a babysitter would be employed to care for the younger child, Bryan Sean, who was three years old at the time of the hearing. Testimony demonstrated that the babysitter's facilities are satisfactory.

A substantial portion of the record deals with appellant's physical and emotional disorders and sexual adventures, both before and after the breakup of the marriage. Appellant admitted having relations with 2 or 3 men, one of whom paid the rent for her apartment after she left appellee. Appellant, however, testified that she has stopped seeing this man. Reverend Robert Hurley testified that he has been counselling appellant once a week for about a year and that her emotional condition has improved.

Appellee introduced the testimony of Mary Little, who was the children's babysitter, both during and immediately after the marriage broke up. She testified that, prior to the separation, appellant was frequently intoxicated when she delivered the children, and that they were not bathed, nor were their diapers changed from one day to the next. On many occasions, the older child asked her for supper because "[h]e said he won't get [it] at home." (NT 60a). Appellant denied ever being intoxicated when she delivered the children, and testified that she took good care of them.

After the separation, the boys lived with appellee and his parents until the completion of the house appellee was building. They then moved into the new house where appellee alone took care of the children for some six to eight months. He has remarried and lives in a farmhouse of more than ample dimensions. At the time of the hearing, his second wife, Velma, aged 20, was pregnant with her first child. The former babysitter, Mrs. Little testified that she has had an opportunity to see how the children have adjusted to appellee's new wife and that "[t]hey just dearly love her and she is the same way with them." (NT 58a). Moreover, she stated that the physical condition of the children, after the separation, was completely different. "They had a bath every night and different clothes on every day." (NT 58a). From her observations, it was Mrs. Little's opinion that the children's welfare would be best promoted by living with their father. Even appellant admitted that the children are healthy and have developed satisfactorily. The current Mrs. Cutler does not work so the children will be in her care during the day. She stated that she loves the children as her own and desires to have them in her home.

The court below found that appellant's emotional disturbances were resolved and, therefore, not a significant factor in its decision. Likewise, as to her past marital

misconduct, the court correctly stated that such facts are significant only to the degree that the welfare of the children is likely to be affected, *see, e. g., Commonwealth ex rel. Spriggs v. Carson*, 229 Pa.Super. 9, 323 A.2d 273 (1974); *Augustine v. Augustine*, 228 Pa.Super. 312, 324 A.2d 477 (1974), and held that such a conclusion could not be drawn from the record.

As to appellee, the lower court found that he has demonstrated his concern for the children and his ability to provide a constructive environment for their future growth. Moreover, the judge was favorably impressed by the current Mrs. Cutler's attitude toward the children.

■ While an appellate court must always give great weight to the opinion of the trial judge who has had an opportunity to see and hear the witnesses and judge their credibility, *Russo Appeal*, 237 Pa.Super. 80, 346 A. 2d 355 (1975), we are not bound, on appeal, by deductions or inferences made by the lower court; *Commonwealth ex rel. Gifford v. Miller*, 213 Pa.Super. 269, 248 A.2d 63 (1968), but must exercise an independent judgment based on the evidence presented. *Commonwealth ex rel. Johnson v. Pinder*, 217 Pa.Super. 180, 269 A.2d 511 (1970). Our own review of the record, however, does not materially disagree with the lower court's.

■ The lower court held that the children's best interests would be served by awarding custody to the appellee, concluding that "the family unit that has been offered and can be offered justifies our conclusion . . . . [T]he factor of stability is decisive and . . . supports retaining a satisfactory situation as opposed to exchanging the same for one that is unknown." We agree.

■ First of all, as we have pointed out on a number of occasions, continued residence of children with one parent is a factor which may, in certain cases, be controlling. *Commonwealth ex rel. Children's Aid Society v.*

*Gard,* 362 Pa. 85, 66 A.2d 300 (1949); *Commonwealth ex rel. Zeedick v. Zeedick,* 213 Pa.Super. 114, 245 A.2d 663 (1968) (dissenting opinion by Hoffman, J.); *Commonwealth ex rel. Kraus v. Kraus,* 185 Pa.Super. 167, 138 A.2d 225 (1958). Young children, particularly those under two years of age as was Bryan Sean, quickly form attachments if treated kindly. Above the age of two, children become strongly attached to those who stand in a parental relationship and who have tenderly cared for them. "Bonds of affection have become so strong that to sunder them suddenly may result not only in the child's unhappiness, but also in its physical injury. . . ." *Commonwealth ex rel. Kraus v. Kraus, supra* at 175, 138 A.2d at 229, *quoting Commonwealth ex rel. Children's Aid Society v. Gard, supra,* 362 Pa. at 97, 66 A.2d at 306. In the instant case, all the available testimony indicates that the children have adjusted, and become attached, to the current Mrs. Cutler. The judge, in the court below, was favorably impressed by her attitude toward the children. The record amply demonstrates that she is an articulate young lady with a desire, expressed both in word and deed, to raise the young as her own. Although we noted in *Commonwealth ex rel. Grillo v. Shuster, supra,* that a young wife pregnant with her own first child is a factor of some import, it is clearly not determinative on the question of where custody should reside. To draw any adverse inference in this case clearly would be arbitrary.

◼ For over a year appellee provided the primary home for these chidlren. Although this would be entitled to little weight if appellee were otherwise an unfit parent, this is not the case. In spite of the fact that he works during the day, appellee has provided a sound environment for the children. The record is not clear as to salary, however, we have held that relative wealth is not important unless it appears that one parent is unable to provide adequately for the children. *See, e. g., Common-*

*wealth ex rel. Holschuh v. Holland-Moritz, supra; Commonwealth ex rel. Shipp v. Shipp,* 209 Pa.Super. 58, 223 A.2d 906 (1966). There is, however, no such intimation.

Although not necessary to our decision, we are seriously troubled by the charges of neglect which were levelled against appellant. While it may be that any lack of attention was precipitated by appellant's previous emotional disorders, there is no indication as to the cause of her problems. If awarded custody, appellant, as the primary parent and disciplinarian, would constantly be subjected to the stresses and strains normally associated with childrearing. It is precisely this type of problem which led the lower court to conclude that an award of custody to appellant would exchange a satisfactory situation for one that is unknown.

Where, after a review of the record, we are satisfied that the lower court's decision was based on all the testimony, weighed and balanced against the paramount question of the welfare of the children, its determination will not be disturbed on review, absent an error of law or abuse of discretion. *Commonwealth ex rel. Pruss v. Pruss, supra; Carlisle Appeal, supra.* Since we agree that the children's welfare will be best served by this disposition, we can find no abuse of discretion.

The order of the lower court is affirmed.

JACOBS, J., files a dissenting opinion in which CERCONE, J., joins.

JACOBS, Judge, dissenting:

Because in my opinion the lower court failed to give proper consideration to the tender years doctrine in reaching its decision in this case involving two boys, seven and three years old, and because the record does not sufficiently reveal the husband's background and capabilities for childrearing, I would remand this case to determine if custody should not be granted to the mother.

Since the court below determined that either parent would be fit and proper to care for these children, it remains to consider in which home the interests of the children will be best advanced. In making this determination the best interest of the children is the polestar by which this Court and the court below is guided. A review of custody decisions in this Commonwealth evidences a continuing effort to serve a child's best interests, not by granting a child the most material advantages or placing a child in what best conforms to a story book family, but by determining the parent who has in the past demonstrated, or who is most likely in the future to provide, the emotional support, the steady presence and the unfaltering love which secures a happy childhood, and granting custody to that parent. To find this primary parent the courts have regularly turned to certain principles of law for guidance. One of these is the tender years doctrine. *Commonwealth ex rel. Lucas v. Kreischer*, 450 Pa. 352, 299 A.2d 243 (1973); *Commonwealth ex rel. Grillo v. Shuster*, 226 Pa. Super. 229, 312 A.2d 58 (1973); *Commonwealth ex rel. Logue v. Logue*, 194 Pa.Super. 210, 166 A.2d 60 (1960). This doctrine represents the court's recognition that in the absence of evidence to the contrary, in our culture the primary parent is usually the child's mother. Rather than produce an arbitrary result, I believe that the application of this time honored rule is in the child's best interest.

In the case at bar, the record gives little indication that the husband was, or is likely to become, the primary parent. It can be gathered from the testimony of the babysitter and the husband's mother that during the parties' marriage the mother had ultimate responsibility for the children. Although the mother was the one to leave the household and children at the breakdown of the marriage, when she was physically ill and emotionally distraught, she did so upon the advice of the husband's attorney, signing agreements drawn up by that attorney

and the husband when she was unrepresented by counsel. It is not surprising that she did not comprehend the far reaching effects of her conduct or her signature. In spite of this, she kept up her close relationship with her children, seeing them virtually every weekend and even certain evenings during the week.

The husband's current arrangement for the children does not, to my mind, represent the stability with which the lower court credited it. Three months before the hearing the husband introduced a new person into their lives by remarrying. The latest Mrs. Cutler is twenty years old, only 13 years older than the older boy, and at the time of the hearing was obviously pregnant with her own first child. This Mrs. Cutler is now the primary caretaker of these children. Considering the husband's attitude toward child raising in the past, the lower court might have given some consideration to the possibility that the boys would not see much of their natural father but would mostly be under the guidance of this young, unrelated wife whose chief interest might well become her own baby. Similar facts appearing in *Commonwealth ex rel. Grillo v. Shuster*, supra, have been identified by this Court as giving cause for concern.

Additionally, the record is silent on the husband's financial ability to take on a dependent wife and another child and continue to provide for the two boys. Appellant mother did a great deal to carry her share of the family's financial burdens during her marriage, and evidence was produced to show that she is still self supporting and can provide for the boys. Although relative wealth is generally irrelevant, strained economic conditions could breed resentment in a new wife with a new baby that could be directed against the children of the first marriage.

The court below gave decisive weight to the factor of stability and held that where all else is equal, the children should remain where they are, i. e., with the hus-

band. The tender years doctrine, which would support the opposite conclusion was not applied. If this Court is to determine whether the lower court acted properly in finding that considerations of stability outweigh these young children's interest in being in the care of their natural mother during their tender years, it must have the unanswered questions regarding the husband's capability and background considered and developed in the record.

I would remand for further proceedings consistent with this opinion.

CERCONE, J., joins in this dissenting opinion.