456 A.2d 597

**In re CUSTODY OF Tara Marie PEARCE, A Minor.**

**Judith PEARCE, Appellant,**

**v.**

**Ernest H. PEARCE.**

Superior Court of Pennsylvania.

Argued Sept. 9, 1982.

Filed Feb. 11, 1983.

Garry Edward Wamser, Lock Haven, for appellant.

Lewis G. Steinberg, Lock Haven, submitted a brief on behalf of appellee.

Before BROSKY, ROWLEY and MONTGOMERY, JJ.

ROWLEY, Judge:

This is an appeal from an order granting custody of the parties' minor child, Tara Marie, to appellee Ernest Pearce.

The parties were married February 29, 1973 and Tara was born August 6, 1977. Although Tara's parents were divorced on October 25, 1977, they resided together after the divorce until March of 1979. Tara resided with her mother, the appellant, from the date of her birth until January of 1981.

On January 15, 1981, appellant entered a hospital for an operation. She arranged for her three children, Michael Knecht, age 11, Shane Wolford, age 8, and Tara to be cared for by her (appellant's) mother and sister. Complications slowed appellant's recovery following the operation and she was unable to care for her children for approximately four weeks. During this period Tara's father, the appellee, offered to care for Tara until appellant's health was improved. Appellant agreed. However, appellee refused to return Tara to appellant when requested to do so.

On February 23, 1981, appellant filed a Petition for a Writ of Habeas Corpus. That same day, the trial court entered

an order directing that Tara be returned to appellant. On March 9, 1981, the court entered an order confirming primary custody of Tara in appellant, Judith Pearce, pending a full hearing on her petition for custody. Several hearings were held, the final one on April 29, 1982. A final order, dated June 14, 1982, was entered granting custody of Tara to appellee Ernest Pearce. This appeal followed.[1]

■ The primary consideration in a custody dispute is the best interest of the child. *See Wenger v. Wenger*, 267 Pa.Super. 134, 406 A.2d 555 (1979). Therefore, the issue before us is whether the court erred in concluding that placing Tara in appellee's custody would be in Tara's best interest.

■ Our scope of review is of the broadest type. *Comm. ex rel. Drum v. Drum*, 263 Pa.Super. 248, 397 A.2d 1192 (1979). We recognize that the hearing judge is in the best position to evaluate the attitudes, sincerity, credibility and demeanor of the witnesses. Therefore, his determination of custody should be accorded great weight. *Com. ex rel. Barbara M. v. Joseph M.*, 286 Pa.Super. 51, 428 A.2d 567 (1981). However, although the hearing court must determine credibility, its findings must be supported by competent evidence. *Comm. ex rel. Oxenreider v. Oxenreider*, 290 Pa.Super. 63, 434 A.2d 130 (1981).

In this case, the trial court based its decision granting custody to appellee on three factors: 1) the court concluded that appellee is able to provide better housing facilities for Tara than is appellant; 2) the court found that appellant exhibited unstable behavior characterized by religious delusions; and 3) the court decided that appellant failed to provide adequate supervision for Tara.

■ We have concluded that these conclusions of the hearing judge are not supported by the record.

1. Appellee's counsel did not appear at oral argument of this case. We have been furnished with only a relatively short brief on appellee's behalf.

The record reveals the following uncontradicted facts. Appellant is thirty-two years old. While pregnant with Tara, she was laid off from her job at Woolrich Woolen Mills and has not worked since. Appellant and her three children live in a three bedroom apartment in Lock Haven Gardens. Tara has her own bedroom and sleeps in a single twin bed. Appellant's income consists of $369.00 a month from Public Assistance. In addition, she has a medical card for the family and receives $157.00 a month in food stamps. Appellant is able to adequately feed, clothe and house her family, including Tara, on her present income.

Appellee is twenty-seven years old and was remarried in June of 1980. Both he and his twenty year old wife are employed at Woolrich Woolen Mills. Appellee has a net income of approximately $135.00 per week. His wife's net income is $115.00 per week. They live in a newly built home on approximately one acre of land. Tara has her own bedroom and a double bed when in appellee's custody. When at appellee's, Tara is cared for at the home of a baby-sitter during the day while appellee and his wife are at work.

█ The relative wealth of the parties is not a decisive factor in determining custody unless it appears that one parent is unable to provide adequately for the child. *Com. ex rel. Cutler v. Cutler,* 246 Pa.Super. 82, 369 A.2d 821 (1977). In this case, it is undisputed that appellant has been adequately providing for Tara's needs. The home evaluations performed by Clinton County Children and Youth Services concluded that both homes were suitable for a child to grow up in. Therefore, the fact that appellee could provide "somewhat better" living facilities should have been given very little, if any, weight.

The court's finding of mental instability [2] and religious delusions on the part of appellant is unsupported by the

---

2. The trial court did not seem to be overly concerned with appellee's history of past instability. It notes that he was convicted of statutory rape at age eighteen, has a history of alcohol and drug abuse, and is "somewhat prone to violence". However, the court accepted the

record. It is true that appellant's family and friends were concerned about her behavior in late January and early February of 1981 and urged her to seek mental health counseling. The trial court placed great emphasis on one particular incident that occurred in late January of that year. Appellant and a girlfriend entered a bar during the afternoon and ordered cokes. According to witnesses, they were "talking about God" and reportedly left a $15.00 tip.

All of the claimed incidents of "unstable" behavior occurred during the time that appellant admittedly was having difficulty recovering from surgery and was taking medication. She was weak and depressed during that period. There is no evidence, however, that appellant has not fully recovered from her health problems. A psychological evaluation of appellant found no psychosis, no major depressive disorder and no paranoid delusions. While finding some "vague paranoid trends", the report stated that any such feelings had a partial basis in reality in view of recent events. Although appellant was tense and somewhat evasive, this reaction was explained as "normal distress" over the difficulties of obtaining custody of Tara.

██ Unless it can be shown that a parent's conduct has had harmful effects on a child, it should have little weight in making a custody decision. *Comm. ex rel. Pierce v. Pierce*, 493 Pa. 292, 426 A.2d 555 (1981). In this case, there is no evidence that appellant's health problems had any harmful effect on Tara. On the contrary, appellant realized that she could not adequately care for her children following her operation and made satisfactory arrangements for alternate care during that period.

As to appellant's religious beliefs, she is a "born again" Christian who reads the Bible often and admits that religion is an important part of her life. The fact that appellant's family and friends have problems understanding her new beliefs does not establish that she is unfit to raise Tara.

conclusion in appellee's phychiatric evaluation that "his most recent marriage and its concomitant stability has tended to ameliorate these faults".

There is no evidence that appellant suffers from any delusions or that she has removed herself from reality. Nor is there any evidence that her "intense interest in religion" has had any harmful effect on her children. *See Com. ex rel. Pierce v. Pierce, supra.*

Finally, the court also concluded that appellant did not provide adequate supervision for Tara. The court emphasized that Tara "liberally uses" the playground across the street from her apartment with no apparent adult supervision. The record shows that the playground in question can be seen from appellant's apartment and is surrounded by other apartment buildings. When playing there and in other areas near her home, Tara is in the company of other neighborhood children and often is accompanied by one or both of her older brothers. These facts do not indicate any negligence on the part of appellant. There is no evidence that the playground in the apartment complex poses any special danger. It is not necessary for a normal, healthy four year old [3] to have an adult constantly at her side when she is playing outdoors.

The court seemed especially concerned with an incident which occurred in the summer of 1980 when Tara ran into the street and was almost hit by a car. Appellant acknowledged that the incident occurred and her testimony as to the circumstances was uncontradicted. She had sent Tara downstairs to get a broom, unaware that it was across the street. She did not know that the child had left the house until she looked out the window and saw her returning. The record indicates that appellant was very upset by the incident and responded appropriately. Appellant testified that Tara knows she is not to cross the street alone and that on the few occasions when the child has done so, she had been disciplined.

The final evidence of appellant's "lack of supervision" occurred in September of 1980. Appellant worked for four evenings that month at the Oak Inn, leaving her son Michael in charge of the younger children for three to four

**3.** Of course Tara is now five and one-half years old.

hours on each of the four evenings. Michael had instructions to call appellant or Donna, a close neighbor, if there were any problems. This was an isolated incident. The record indicates that at all other times when appellant went out Tara would either have a babysitter or be left with relatives. It is our opinion that none of the above-mentioned evidence supports a finding of lack of adequate supervision on the part of appellant.

Although it is briefly mentioned in the trial court's opinion, we believe that the court failed to give adequate consideration to the effect a change of custody would have on Tara. Continued residence of the child with one parent is a factor which may, in certain cases, be controlling. *Com. ex rel. Cutler v. Cutler*, 246 Pa.Super. at 88, 369 A.2d at 824. Tara has resided with appellant since birth. All of the evidence indicates that there is a very close and loving relationship between appellant and her daughter. Tara also has a close relationship with her two half brothers. The psychological evaluation of Tara indicates that she has flourished under appellant's care. She was found to be a typical happy four year old of high average intelligence, with no indication of any emotional problems.

■ Furthermore, Tara expressed a strong preference for remaining with her mother. While the wishes of the child are not controlling, they do constitute an important factor which must be carefully considered in determining the child's best interest. *Com. ex rel. Pierce v. Pierce*, 493 Pa. at 299, 426 A.2d at 559. When asked why she preferred to live with appellant, Tara responded that appellee and his wife always fight when she is there, which upsets her. When Tara was returned to appellant after briefly living with appellee, she was upset, withdrawn and reluctant to leave her mother's side. She initially refused to go on visitations with appellee, and had to be forced to go, kicking and crying. While the situation had improved during the proceedings in the trial court, Tara continued to be reluctant to go on visitations with appellee. On several occasions, Tara asked to be taken back to her mother's home

early. While there was inconsistent testimony from Tara herself as to whether she actually enjoyed her visits with appellee once she got there, she made it very clear that she did not desire to live with appellee.

In conclusion, the hearing court's finding that it would be in Tara's best interest to reside with appellee is not supported by the record and therefore constitutes an abuse of discretion. The record indicates that both parties are fit parents and can provide a suitable home for Tara. Therefore, in this case maintenance of the status quo, along with Tara's strong preference for remaining with appellant, should have been decisivè. *See Com. ex rel. Oxenreider v. Oxenreider, supra.*[4] We will remand this case, therefore, for the entry of an appropriate order.

■ Custody orders are, of course, unique and never final. *Friedman v. Friedman,* 224 Pa.Super. 530, 307 A.2d 292 (1973). The order to be entered will, therefore, be temporary in nature and subject to change if new circumstances occurring since the date of the last evidentiary hearing are determined to affect Tara's welfare. *Com. ex rel. Beemer v. Beemer,* 200 Pa.Super. 103, 188 A.2d 475 (1962). The petitioner who seeks a modification of the order has the burden to prove that a change of circumstances has occurred. *Com. ex rel. Hickey v. Hickey,* 216 Pa.Super. 332, 264 A.2d 420 (1970).

The trial court's order of June 14, 1982, is vacated and the case is remanded to the trial court with instructions to enter an order granting custody of Tara Marie Pearce to her mother, appellant Judith Pearce. The trial court may establish appropriate provisions for partial custody for the non-custodial parent. The order granting custody to appellant shall be subject to the right of either party to seek a modification of the order and to present evidence to the trial court of a substantial change in circumstances since the

---

**4.** Appellant has filed an "Application for a Stay Pending Appeal". The Application has been referred to us for disposition. However, in view of our disposition of the merits, appellant's "Application for a Stay" is moot and it is unnecessary for us to rule on it.

date of the last evidentiary hearing. Jurisdiction is relinquished.