## Order

**L.F., Petitioner,**

**v.**

**D.F., Respondent.**

High Court of American Samoa
Trial Division

DR No. 95-02

January 28, 2005

Before KRUSE, Chief Justice; LOGOAI, Chief Associate Judge; and ATIULAGI, Associate Judge.

Counsel: For Petitioner, Barry I. Rose
For Respondent, Robert K. Maez

## AMENDED CUSTODY ORDER

■ Ancillary to divorce, the court may by order provide for "the custody, care, maintenance and support of the minor children of the parties." A.S.C.A. § 42.0210. Pursuant to stipulation of the parties herein, physical custody of their minor child was decreed shared; the court then concluding that "the parties' agreement on shared custody [was], for the time being, in the best interests of the minor child." *See* Opinion & Order, entered May 6, 2003, slip op. at 3. However, our order also provided that "when the minor child commences school on a regular basis, the court will revisit this shared custody arrangement." *Id.*

For a number of reasons, we find it timely to revisit the child custody issue. First, the child will be five (5) years old on February 8, 2005. At the same time, he has also been attending school on a "regular basis," having been enrolled over the present school year at Pacific Horizons School in Tafuna. Moreover, the present custody agreement, which literally has the child going back and forth every other day between his parents, is proving detrimental to the minor. The concern now is to minimize the child's exposure to the enduring conflict between his parents. Among other things, the parties cannot seem to effectively talk to one another about the child, except through their lawyers. Thus, and notwithstanding stipulation, enforcement of the stipulated custody arrangement has occupied our attention, prompting us at one point to note that "civility, give and take, common sense, and, indeed, mutual concern for their child seems to be lost on the parties at this time." *See*

32

Interim Order, entered July 15, 2003.

The present custody order was premised upon the parties' mutual desire to remain active participants in the child's day to day upbringing. Given the child's formative development stage, we agreed that it was important and healthy for the child to have ready access to both his father and mother. The perception was that some sense of normalcy could be restored to the child, following the family breakup, by ongoing contact with both parents. But as events have unfolded, it is quite clear that the parties share little in common on day to day parenting aims which in turn has resulted in mixed and confusing signals to the child. In these matters, the Appellate Division recently said in *Tapeni v. Tapeni*, 6 A.S.R.3d 81, 84 (App. Div. 2002), that

> [t]he cornerstone of any custody proceeding is the determination of what is in the best interest of the child. *See Brooks v. State Department of Human Resources*, 526 So. 2d 693, 594 (Ala. Ct. App. 1988); *In Re Custody of Townsend*, 427 N.E.2d 1231, 1234 (Ill. 1981); *Johnson v. Pinder*, 269 A.2d 511, 512 (Penn. 1970). When the dispute over custody is between the two natural parents, no presumption arises as to who should get custody; both parents "start[] off on equal footing." *In Re Custody of Townsend*, at 1235. Indeed, "[a]lthough a mother is the natural custodian of her young," a court must weigh many factors to determine which arrangement would best suit the child. *Aumavae v. Aumavae*, 27 A.S.R. 2d 164, 167 (Trial Div. 1995) (citations omitted).

■ In our assessment of the evidence, we find that the mother is the more suitable parent to have primary custody of the minor at this stage in his life. The mother has proven better able to provide the child with a more stable home environment, with nearby access to family support from the child's maternal grandparents that can be confidently counted upon. (The child's maternal grandmother, a retired educator, takes it upon herself to drive the child to and from school, taking care of him often after school hours even though the child has a regular sitter until his mother gets home from work.) She has proven more consistent setting direction and organization with the child's day to day life from the mundane to matters of personal hygiene and healthy eating.

The father, on the other hand, has lived out of the Rainmaker Hotel, where he has resided with the child on his allocated custodial days; hardly a suitable environment for a stable home life. Since encountering the court's order for home study evaluations, the father now holds himself out as resident in Fagatogo, at his late father's house, although he still maintains the hotel room at a cost of $500 a month for, he says,

"storage." The Fagatogo home is currently shared with respondent's sister and her six children.

Additionally, we find that the mother has the healthier parenting outlook, by emphasizing self-discipline and structure in the child's daily routines. On the other hand, the father's attitude is by comparison nonchalant in this regard. Dismissing pre-school as merely a "babysitting" service, the respondent father glibly admitted getting his son late to school on occasions because he felt it was more important to let the child sleep-in when he was tired. But as the child's school principal testified, the significance of regularly getting a pre-schooler to school on time ensures that the young child does not miss out on the all too important opportunity to participate with the rest of his class in the transitioning process of adjustment between home life and that at school. Lateness thwarts ready adjustment and results in disruption not only to the rest of the class but hampers the tardy child's ability to readily fit in to the day's activities.

As indicated by their respective responses to the court's orders, the mother has shown more sensitivity toward the child's general well-being. She has taken pain to carefully heed custodial transfer particulars, as set out very precisely in the custody orders, whereas the father's relatively lackadaisical attention to such detail has been the cause of much discord. In yet another instance, we ordered medical evaluations of the minor following allegations concerning matters of personal hygiene. Here, it was the mother who attended to comply with this court order. At the same time, it is not lost on us that when faced with another court order, to be undertaken by Child Protective Services, Department of Social Services, for home study evaluations of the parties living situations, the respondent father actively resisted compliance by engaging in cat-and-mouse tactics to avoid contact with case worker Ms. Pamata Auelua, as she sought him out to evaluate his living quarters at the Rainmaker Hotel. From the respondent's own testimony, he viewed the evaluation exercise as an unwarranted invasion of his "privacy." In our view, his resistance is consistent with having something to hide from the court, and since the home study was clearly for purposes determining the child's best interest and welfare, we are also inclined to view respondent's resistance as the placing of his own personal (privacy) interests ahead of his child's best interests.

■ Respondent argues that his work schedule offers better flexibility in terms of accommodating more parental contact with the child. He contends that the petitioner's daily work hours are more restrictive in this regard. We are not impressed. Work hours are not conclusive. There is more to raising a child than a quantitative value assigned to parental contact. Other things considered, parental contact with the mother,

34

notwithstanding longer working hours, has been very beneficial to the child in terms of promoting direction and structure to the child's life.

Finally, Child Protective Services recommends the child's placement with his mother.

## Order

On the foregoing, the custody orders hereinbefore entered are vacated. In lieu thereof, the following order shall enter:

1. Until further order of court, custody of the parties' minor child is awarded to the petitioner, the child's mother.

2. The respondent father, however, is entitled to physical custody of the minor child on alternative weekends as well as each alternative school holiday occurring throughout the academic school year. For purposes hereof, "weekend" is defined as 6:00 p.m. Friday evening to 6.00 p.m. Sunday evening *promptly*. The holiday period is defined as 6:00 p.m. the day previous to the holiday to 6.00 p.m of the day on which the holiday occurs.

It is so ordered.