407 A.2d 886

**Levonia HARASCHAK**

**v.**

**Michael John HARASCHAK, Appellant.**

Superior Court of Pennsylvania.

Argued March 20, 1979.

Decided July 20, 1979.

Eric D. Turner, Philadelphia, for appellant.

Lawrence M. Klemow, Hazleton, for appellee.

Before CERCONE, President Judge, and WATKINS and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from an order transferring custody of two small children from their father to their mother. The reasons for granting the transfer stated by the lower court contain several errors of analysis and a crucial finding of fact based upon the presumed occurrence of an uncertain future event. Because the record does not indicate that a transfer of custody would be in the best interests of the children, we reverse the order of the court below and remand for the entry of an order maintaining custody with the father and establishing visitation rights with the mother.

The children in this case were aged 4½ and 6½ years at time of the hearing below. While they have lived most of their lives with their parents in various apartments,[1] prior to trial they had lived for one year continuously with their father, uncle, and paternal grandparents in the grandparents' home in Drums, Luzerne County.[2] The father works at the White Haven Center for retarded individuals, earning $130 per week net, while he completes his studies for a Master's Degree in Education. He pays his parents $75 per week for his and his children's room and board. During his working hours, the grandmother cares for the children. They live in a three-bedroom house on a half-acre lot. The father has converted the attic into his bedroom so the children have a bedroom for themselves.

The mother works as a tester at an RCA plant. Her gross weekly salary is $220. She works the second shift, leaving

1. The children lived alone with their mother on two different occasions, once for ten months when the parties were separated, and once when the father was in the Army. (The record is not clear as to the precise length of the latter absence. The father left before the first child was born and returned before the second child was born.)

2. For one month when the parties were temporarily reconciled during this period, the children lived with both parents in an apartment.

her apartment at 3:00 p. m. and returning about 1:00 a. m. the next day. Her apartment has two bedrooms and is located near a playground. At trial, she testified that her union told her that she would be laid off from her job, but that the layoffs were not official yet and she had not received any notice from RCA.

When the parties last separated in November of 1977, the mother agreed that the father should have custody of the children and she would pay him $35 each month in child support. At that time, she was unable to provide housing for the children. Because of intense mutual hostility between the mother and the paternal grandparents, she has been unable to visit her children at Drums. She initiated the instant action for custody after obtaining her present apartment.

"[A]ppellate review of child custody cases is of the broadest type." *In re Neal,* 260 Pa.Super. 151, 152, 393 A.2d 1057, 1058 (1978). "[W]e are not bound by deductions or inferences made by the lower court from the facts as found. . . . We need not accept a finding which has no competent evidence to support it, but are instead to make an independent judgment based on the evidence and testimony, and make such order on the merits of the case as to do right and justice." *Tomlinson v. Tomlinson,* 248 Pa.Super. 196, 201–02, 374 A.2d 1386, 1389 (1977).

The main reason stated by the court below for transferring custody was its finding that the mother, unlike the father, would be able to devote full-time attention to the children:

"The mother, now able to devote full-time to the upbringing and supervision of her children, is in a superior position to the father who must rely on his parents during his working hours. However, if, factually, the contemplated lay-off has not occurred, then the father's provision of a home with his parents might be more stable and desirable than the mother's baby-sitting arrangement, but this factor would require a reopening of the record to determine this fact."

The error here is that at the time of the hearing, the mother *was* employed by RCA. By her own testimony, the impending layoffs were not official. While the union was warning its members of possible layoffs, there was no word from RCA. The lower court's conclusion that the mother would be laid off is sheer speculation. Unless the *mother* reopened the record to show the fact of her layoff, the court should have, by its own analysis, maintained custody in the father's "more stable and desirable" home.[2A]

We must also remand because the lower court applied two different legal standards, both of which were erroneous, in deciding this case.

■■■ "[T]he sole issue to be decided in a custody proceeding between contending parents is the best interests and welfare of the child." *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 294, 368 A.2d 635, 637 (1977). The "tender years" presumption, that custody of a young child should be awarded to the mother, has been abolished. *Rummel v. Rummel*, 263 Pa.Super. 97, 397 A.2d 13 (1979); *McGowan v. McGowan*, 248 Pa.Super. 41, 374 A.2d 1306 (1977). Thus, a father need not prove that a mother is unfit to obtain custody of their children. *Commonwealth ex rel. Cutler v. Cutler*, 246 Pa.Super. 82, 86, 369 A.2d 821 (1977). The court must balance the evidence of both parents' relative fitness in determining the best interests of the child. *Ramos v. Rios*, 249 Pa.Super. 487, 378 A.2d 400 (1977); *In re Hernandez*, 249 Pa.Super. 274, 376 A.2d 648 (1977).

■■ In one part of its opinion, the lower court treats the instant case as a custody dispute between a parent and a non-parent:

"This dispute takes on an aspect of a third party versus mother dispute as the testimony of the [paternal grandmother] . . . candidly admits that she considers herself to be the substitute mother. . . . [A]s to this aspect . . . the mother has a prima facie right to custody and the

---

**2A.** *See Lewis v. Lewis*, 267 Pa.Super. 235, 242, 406 A.2d 781, 784–785 (1979) (court should not rely on predictions of future events).

grandparent has the burden of proving that the welfare of the children requires custody to be denied the mother." However, the mere fact that the grandmother takes care of the children while the father works does not mean that the grandmother must justify custody in herself any more than it means that the mother's babysitters should have to justify custody in themselves. This is a custody dispute between parents: the mother does not have a "prima facie" right to custody.

Secondly, while paying lip service to the "best interests" standard, most of the court's analysis appears to have been based upon the discarded "tender years" presumption. The court starts its discussion of the case in this manner: "While the mother seeks custody, the father seeks to deny her *that maternal right*." The court concludes that the father failed to establish that the mother was an unfit parent and makes abundant findings that the mother was now a good parent and provider. While these findings are supported by the record, the court made no evaluation or findings of how the children's welfare was being served in their environment at the Drums house with their father.

■ Since the abolition of the "tender years" doctrine, there is no "maternal right" to custody as against the father. It is no longer permissible merely to find that the mother is not unfit; the lower court should have balanced the evidence of both parents' relative fitness in determining the best interests of the children.

■ In addition to the above errors, we also note that the court below failed to take into consideration the fact that, except for a one-month interruption, the children had lived continuously with their father at Drums for a year at the time of trial.

In *Commonwealth ex rel. Cutler v. Cutler*, 246 Pa.Super. 82, 369 A.2d 821 (1977), we held that as between fit parents, custody would not be awarded to the mother because of the children's "tender years;" rather the father should be awarded custody to avoid upsetting the children's adjust-

ment to their prevailing environment with their father. What the Court said in *Cutler* is equally applicable to the instant case:

"[A]s we have pointed out on a number of occasions, continued residence of children with one parent is a factor which may . . . be controlling. . . . Young children . . . quickly form attachments if treated kindly. Above the age of two, children become strongly attached to those who stand in a parental relationship and who have tenderly cared for them. . . .

"For over a year [the father] provided the primary home for these children. Although this would be entitled to little weight if [the father] were . . . an unfit parent, this is not the case. In spite of the fact that he works during the day, [the father] has provided a sound environment for the children."

*Id.,* 246 Pa.Super. at 88–89, 369 A.2d at 824. *See also Commonwealth ex rel. Swanson v. Barry,* 199 Pa.Super. 244, 249, 184 A.2d 370, 373 (1962) (where children have adjusted to and thrived in father's custody for considerable period of time, custody should not be transferred to mother).

The record in this case is sufficiently well-developed to allow us to make a custody disposition. *See In re Whittle,* 263 Pa.Super. 312, 317, 397 A.2d 1225, 1227 (1979); *In re Hernandez,* 249 Pa.Super. 274, 300–303, 376 A.2d 648, 662–63 (1977). Although the lower court did not discuss the state of the children's environment at the Drums home, it is apparent from the record that the children are loved and well-cared for there and have happily adjusted to the household and the extra affection bestowed upon them by their paternal grandparents. Except for the fact that the mother has been denied visitation[3], there is simply no evidence in the

---

3. The lower court in its opinion stated that the fact that the mother had been denied visitation was another reason why custody should be transferred. This was not correct. The failure of the custodial parent amicably to allow visitation does not automatically mean that it is in the best interests of the child to transfer custody. If there are

record suggesting that any circumstance or condition of the Drums home has adversely affected the children's best interests and welfare. Therefore, rather than upset the *status quo* of the children's life, the court below should have entered an order maintaining custody with the father but granting appropriate visitation rights to the mother.

Reversed and remanded for the entry of an appropriate visitation order for the mother consistent with this opinion.

problems with voluntary visitation, then the court should enter and enforce an appropriate visitation order for the non-custodial parent. Thus our mandate includes a direction to the lower court to fashion a visitation order for the mother.