420 A.2d 507

COMMONWEALTH of Pennsylvania ex rel. David BUDZOWSKI, a Minor, by Beverly Budzowski, Next Friend and Mother

v.

James E. BUDZOWSKI.

Appeal of: Beverly BUDZOWSKI (now Beverly Metz).

Superior Court of Pennsylvania.

Submitted June 29, 1979.

Filed May 9, 1980.

217

Frank J. Piatek, New Castle, for appellant.

George P. Micacchione, Ellwood City, for Commonwealth, appellee.

Before CERCONE, President Judge, and WIEAND and LOUIK,* JJ.

* Judge DONALD E. WIEAND is sitting by special designation. Judge MAURICE LOUIK, of the Court of Common Pleas of Allegheny County, Pennsylvania, is sitting by designation.

LOUIK, Judge:

This is an appeal by the natural mother of a fourteen year old boy from an Order granting custody to the father. For the best interest of the child, the name will be withheld and he will be referred to herein as "the child" or "the minor". The proceedings were instituted by the father on a petition to amend a prior order which had granted custody to the mother. It was alleged that the mother had abused the child and that the child did not want to reside with his mother and was fearful of her.

Primary custody had been in the mother by virtue of prior orders of court with the father having visitation rights. The court granted temporary custody to the father and after hearing, final orders were entered giving custody to the father.

The action was brought after the father discovered a large hematoma on the child's scalp when the father had taken the child pursuant to his visitation rights. The child told the father that he had been hit on the head with a shoe by his mother. Upon examination by a doctor, it was found that there was a scar on the boy's right shoulder which the child said had been inflicted upon him when his mother had struck him with a belt in the past.

Appellant raises three issues in this appeal:

(1) That there was abuse of discretion in permitting the minor child to testify;

(2) That the transfer of custody was not based on competent testimony, and;

(3) That the court used an impermissible standard.

This minor was fourteen years of age, and although he was slightly below normal in intelligence and was withdrawn, the court found that he knew the difference between truth and falsehood.

■ With respect to this contention, it has been held that although the scope of review in this court, in child custody cases, is of the broadest type, the power of this court is not

without limitation. In the very recent case of *Commonwealth v. Davis*, 268 Pa.Super. 401, 408 A.2d 849, the prior holdings of this court were reiterated. The court said:

"In the past we have taken great care to stress: '. . . this broader power of review was never intended to mean that an appellate court is free to nullify the fact–finding function of the hearing judge. It is a principle which runs through all our cases that the credibility of witnesses and the weight to be given to their testimony by reason of their character, intelligence, and knowledge of the subject can best be determined by the judge before whom they appear . . .' *Commonwealth ex rel. Harry v. Eastridge,* 374 Pa. 172, 177, 97 A.2d 350, 353 (1953).

This fundamental limitation on the power of a reviewing court was articulated in *Commonwealth ex rel. Rainford v. Cirillo*, 222 Pa.Super. 591, 597–98, 296 A.2d 838, 841 (1972): '. . . we have recognized that the trial judge is in a position to evaluate the attitudes, sincerity, credibility, and demeanor of the witnesses. Because we are not in such a position, we have recognized that a trial judge's determination of custody should be accorded great weight . . . Only where we are constrained to hold that there was a gross abuse of discretion should an appellate court interfere with the decisions of the hearing judge . . ."

We can find no abuse of discretion in the court's permitting the minor child to testify.

The second and third issues raised by appellant are really questions as to whether the proper standard of proof was followed in the instant case. The appellant claims that the proper standard is that of "clear necessity" and that the lower court used the standard of "best interest" of the child. The distinction of these standards was clearly set forth in the case of *"In the Interest of La Rue"*, 244 Pa.Super. 218, 366 A.2d 1271, where there was a full and complete discussion of the proper standards to be used. The court set forth the distinction between the situation where a child is taken from its parents as contrasted to the standard to be used as between parents. The Court said:

"Of such restraints upon the State, the most important is the principle that a child may not be taken from its parents except upon proof of 'clear necessity.' *In re: Adoption of R.I.*, 468 Pa. 287, 361 A.2d 294 (1976); *Stapleton v. Dauphin County Child Care Service*, 228 Pa.Super. 371, 324 A.2d 562 (1974); *Rinker Appeal*, 180 Pa.Super. 143, 117 A.2d 780 (1955). In the present case, the lower court ignored this principle. Instead, it decided the case as it would the usual custody case, where the question is whether the mother or father should have the child. That is to say, the court awarded the twins to the foster parents, and denied custody to their mother, because it found that that was in the twins' 'best interest'. Lower court slip opinion at p. 13.

This was error. 'Best interest' is a much less exacting standard than 'clear necessity'. 'Best interest' is a general welfare standard. Thus, in deciding in the usual custody case whether the mother or father should have the child, the court will typically consider such matters as the size and location of the mother's home as compared with the father's, the mother's character as compared with the father's, the availability of educational and religious facilities and the mother's financial resources as compared with the father's. To hold that the present case should be decided in this manner would destroy the primacy we have assigned the family, as seen both in the cases and the Juvenile Act. Accept 'best interest' as the standard by which to decide whether a child may be taken from the family, and social workers and judges of strong religious convictions will disapprove of a family when the child does not attend Sunday School; other social workers and judges, because of a family's social habits (the mother smokes marihuana; she lives with a man not her husband; the marriage is interracial); others, because of a family's economic status (the family is on welfare, it lives in a trailer; the husband is constantly changing jobs). Should this be thought an overstatement, consider such cases as *Commonwealth ex rel. Myers v. Myers*, 468 Pa. 134, 360 A.2d 587 (1976); and *Gunter v. Gunter*, 240 Pa.Super. 382,

361 A.2d 307 (1976). And see *Janet D. v. Carros,* 240 Pa.Super. 291, 362 A.2d 1060 (1976)."

Most recently, this court has reiterated time and time again that as between parents, the proper standard is that of the best interest of the child. See *Haraschak v. Haraschak,* 268 Pa.Super. 173, 407 A.2d 886; *Garrity v. Garrity,* 268 Pa.Super. 217, 407 A.2d 1323; *Bedio v. Bedio,* 268 Pa. Super. 231, 407 A.2d 1331.

The court here found that this child is one who needs special attention in order to function normally in society, and that the child should be enrolled in a special education class. Although such enrollment had been recommended several times in the past by teachers and counselors, the child's mother had refused to have the child placed in such special education classes, and instead attempted to work with him herself. This was found to be unproductive because, although the mother has tried to be an effective parent, she is somewhat emotional and over–protective. The child's custody in the father will result in the child being placed in a school class more suited to his needs and capabilities, and the evidence clearly supports the court's findings that it is to the best interest of the child that custody be granted to the father.

Order affirmed.