J-S05029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| O.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| C.W.B. | : | |
| | : | |
| Appellant | : | No. 1253 WDA 2017 |

Appeal from the Order August 2, 2017
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD 16-7751/008

BEFORE: OLSON, J., OTT, J., and STRASSBURGER*, J.

MEMORANDUM BY OTT, J.:                    **FILED APRIL 20, 2018**

C.W.B. ("Father") appeals *pro se* from the August 2, 2017 custody order in the Court of Common Pleas of Allegheny County that granted O.B. ("Mother") primary physical custody during the school year, and Father partial physical custody during the summer months in Germany, *inter alia*, with respect to the parties' son, J.B. ("Child"), born in June of 2008. In addition, the order granted Mother legal custody with regard to educational decisions, and it granted the parties shared legal custody in all other respects. Upon careful review, we affirm.

The record reveals that Father is a United States citizen who resides in Berlin, Germany. Mother is a Ukrainian citizen who is a lawful permanent resident of the United States. She resides with Child in Pittsburgh. The trial

_____

* Retired Senior Judge assigned to the Superior Court.

court aptly summarized the factual and procedural history of this case, as

follows.

> Child was born to the parties . . . while they were residents of the Ukraine. For the first three years of his life, Child lived in the Ukraine and in Ireland. In 2011, Father obtained a position in Germany[,] and Mother was accepted into a Ph.D. program at the University of Pittsburgh. After a summer vacation in Germany, Child and Mother moved to the Pittsburgh area and Father remained in Germany, maintaining regular communication with his family. Two years later, in 2013, Child underwent cardiac surgery and recuperation from that surgery, during which time Father lived with Mother and Child in Pittsburgh. The entire family moved to Berlin in August of 2013. Mother continued her Ph.D. program remotely[,] and Child was enrolled in the J.F.K. School, a bilingual school with many activities in which Child participated.[1] Child made many friends and was, by all accounts, happy in Germany.
>
> In August of 2015, Mother determined to move back to Pittsburgh. The marriage between the parties had disintegrated [and] both parties agree that they were planning to divorce. According to Father, the parties reached an agreement whereby Child would go to Pittsburgh with Mother for a year, then return to Father in Berlin for a year, and this "shuttle custody arrangement" would continue on a year on/year off basis. Mother denies that there was ever such an agreement.
>
> Child was enrolled in second grade for their 2015-2016 year in the Pittsburgh Public School District where he has remained a student since arriving in Pittsburgh. By all accounts he has done well and is an active participant in school and extracurricular sports and activities. In all respects, Child appears happy and is thriving in Pittsburgh.
>
> Soon after the move, Father communicated to Mother that he was seeking work in the U.S. as well as in other countries[,] and

_____

[1] Father testified that Child attended kindergarten and first grade in the J.F.K. School. N.T., 7/6/2017, at 201.

Mother communicated to Father that she did not believe the shuttle arrangement was a good plan going forward. Many e[-]mails were sent throughout 2016 between the parties regarding the existence or non-existence of an agreement on Child's custody and what would be happening with that custody going forward. In those e[-]mails, Father expressed his insistence that the agreement be followed, while Mother expressed her belief that such a shuttle arrangement was not in Child's best interests.[2]

In April of 2016, Mother filed for divorce[]. [O]n May 6, 2016[,] she filed a complaint for custody. I entered an interim Order on May 31, 2016, awarding physical custody pending trial to Mother and providing custody to Father for the Child's summer break from school.[1] A custody trial was scheduled before me for November of 2016. In July of 2016, Father filed a petition in the U.S. District Court for the Western District of Pennsylvania, seeking Child's return to Germany under the Hague Convention.[3]

_____

[1] My [interim] Order put no restrictions on Father's custody during the summer. Father, as it turns out, did not realize he could exercise that custody in Germany[,] and so failed to exercise it.

_____

The District Court held a two-day trial in August of 2016. . . . [I]t denied Father's petition, finding, *inter alia*, that there was no

_____

[2] We observe that the certified record does not include any e-mail exhibits. As best we can discern, Father introduced the subject e-mails at trial, and the trial court admitted them. N.T., 7/6/2017, at 261, 263, 269-273. In **Commonwealth v. Preston**, 904 A.2d 1, 6 (Pa. Super. 2006) (*en banc*), this Court explained that we may not consider any document that is not in the certified record. Further, we stated that it is the appellant's responsibility to ensure that the certified record is complete. **Id.** at 7.

[3] **See** Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention") codified by the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601 *et seq.* ("ICARA").

- 3 -

agreement the Child would return to Germany after one year. The District Court also found Child was acclimatized to Pittsburgh and that Pittsburgh was his habitual residence. The court accorded significant weight to its *in camera* interview of Child. Accordingly, Child was to remain in Pittsburgh while the custody cases before me continued.

Father next appealed to the Court of Appeal[s] for the Third Circuit at case number 16-3667.[4] On October 17, 2016, I granted Father's Motion to Stay the state proceedings, providing that either party could praecipe for a judicial conciliation. In March of 2016, in response to Father's Motion for a custody trial, I scheduled a trial for the 5th and 6th of July, 2017.

Trial proceeded with Mother appearing pro se and Father represented by counsel. The parties stipulated [to] a number of exhibits and I heard from the parties, their witnesses[,][5] and I conducted an interview of Child, a particularly articulate,

_____

[4] The Third Circuit Court of Appeals explained as follows:

The purposes of the Hague Convention are "to secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "to ensure the rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." The Convention was "not designed to resolve international custody disputes." Rather, in addressing Hague Convention petitions, courts are limited "to restor[ing] the status quo prior to any wrongful removal or retention, and to deter[ring] parents from engaging in international forum shopping in custody cases."

*[C.W.B.] v. [O.B.]*, 866 F.3d 169, 177 (3d Cir. 2017).

[5] Mother testified on her own behalf, and she presented the testimony of V.S., her brother; and Gina Lasek, Child's teacher in the 2016-2017 school year. Father testified on his own behalf, and he presented the testimony, on cross-examination, of O.T., the mother of one of Child's friends in Pittsburgh; Frank Steinbach, *via* telephone, a partner in the patent law firm in Germany where Father works; and H.R., the father of Child's friend in Berlin.

- 4 -

intelligent, and sensitive [c]hild. At the conclusion of trial, I entered my August 2, 2017 Order awarding Mother primary physical custody during the school year as well as legal custody in educational matters. Father was awarded partial physical custody for the summer months and holidays in Germany, and liberal physical custody should he travel to Pittsburgh.[2]

_____

[2] Immediately after trial, Father fired his counsel and filed a motion pro se, which essentially requested that the case be reopened to submit further evidence. This motion was subsequently withdrawn. Father has proceeded pro se since trial.

_____

On August 3, 2017, the Court of Appeals for the Third Circuit filed its Opinion, upholding the decision of the District Court. Although the Court of Appeals disagreed with the District Court that there had not been an agreement between the parties, it found Child should remain in Pittsburgh on other grounds.

On August 14, 2017, I denied Father's Motion for Reconsideration[,][6] and he timely filed this appeal [pro se] as well as his [concise] [s]tatement of [errors] [c]omplained of on [a]ppeal.

Trial Court Opinion, 9/29/2017, at 1-4 (citation to record omitted). The trial

court filed its opinion pursuant to Pa.R.A.P. 1925(a) on September 29, 2017.

Father, acting *pro se*, presents the following issues for our review:

[1.] Does the evidence support the Trial Court's evaluation of the custody factors 1, 3, 4, 5, 7, 9, 10, 12, and 13?

[2.] Did the Trial Court err by giving Mother sole legal custody in regard to matters of education?

_____

[6] The trial court held a hearing on Father's motion for reconsideration on August 11, 2017.

[3.] Did the trial court err in failing to recognize the agreement of 2015 that the parties had regarding [Child's] residence? Did the Trial Court err by believing that such an agreement would not affect the determination of the best interests of [Child]?

[4.] Did the Trial Court err by failing to account for the relative stabilities of the respective residences of the parties, failing to take these relevant facts into account in assessing the § 5328 factors?

[5.] Is there evidence to support the trial court's findings? Was there a capricious disbelief of evidence?

[6.] Was the decision a product of partiality, prejudice, bias, or ill will?

Father's brief at 9-10.

We review Father's issues according to the following scope and standard of review:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

> **R.M.G., Jr. v. F.M.G.**, 2009 PA Super 244, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting **Bovard v. Baker**, 2001 PA Super 126, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the

- 6 -

> opportunity to observe the proceedings and demeanor of the witnesses.
>
> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.
>
> **R.M.G., Jr., supra** at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. **Ketterer v. Seifert**, 2006 PA Super 144, 902 A.2d 533, 539 (Pa. Super. 2006).

**A.V. v. S.T.**, 87 A.3d 818, 820 (Pa. Super. 2014). In addition,

> [T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

**Ketterer v. Seifert**, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting **Jackson v. Beck**, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." **Saintz v. Rinker**, 902 A.2d 509, 512 (Pa. Super. 2006), *citing* **Arnold v. Arnold**, 847 A.2d 674, 677 (Pa. Super. 2004).

Child custody actions are governed by the Child Custody Act ("Act"), 23 Pa.C.S. §§ 5321-5340. Trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) . . . when entering a custody order." *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original); *see also A.V.*, *supra* at 823 (citation omitted) (providing that trial courts shall set forth the mandatory assessment of the Section 5328(a) best interest factors "prior to the deadline by which a litigant must file a notice of appeal"). This statutory section provides as follows.

### § 5328. Factors to consider when awarding custody.

**(a)** *Factors.* – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Instantly, in the subject order, the trial court considered all of the Section 5328(a) factors. *See* Order, 8/2/2017, at 9-12. The court found that Section 5328(a)(2), (5), (6), (14), and (15) were inapplicable and/or insignificant in this matter. The court found that Section 5328(a)(1), (8), and (11) did not favor either party. The court found that all of the remaining factors favored Mother.

The court placed determinative weight on Section 5328(a)(7), the well-reasoned preference of the child, based on the child's maturity and judgment. Child, then nine years old, testified that he would like to "stay here." N.T., 7/6/2017, at 19. He testified, "I mostly want to be with my mom." *Id.* at 40. Child testified he would like to spend his school vacations with Father, including, but not limited to, summer, Christmas, and Easter breaks. *Id.* at 19. Child reasoned, in short, that he did not know if the J.F.K. School would have room for him, and, if it did not, whether he would lose his friends who attend that school. *Id.* at 20-21. Further, he stated that Mother takes him to swim practice, and that Father "can't . . . because he has too much work. . . ." *Id.* at 43. Child described living in Germany with Father who "hardly ever brought me to swim practice, what I really wanted to do."[7] *Id.* He explained

_____

[7] Mother testified that Child lived in Berlin from the summer of 2013, to the summer of 2015. N.T., 7/5/2017, at 141. Mother testified that, for "most of th[at] time," she resided in Berlin with Father and Child. *Id.* However, she

that, when living in Germany with Father, Father "works very late. . . .  He's working until like 9:00 [p.m.], and then he picks me up at 9:30 [p.m.]." *Id.* at 43.  Child continued on inquiry by the trial court regarding when he lived in Germany with Father:

Q. Where does he pick you up?

A. At JFK [School].  And then it will be 9:30 [p.m.] at that time.
And then when we get home, it will be already 10:00 [p.m.].

Q. Bedtime?

A. No.  Past my bedtime.

. . .

A. My bedtime is now 8:30 [p.m.], because I need lots of sleep.

---

testified that she traveled "back and forth" from Berlin to Pittsburgh in pursuit of her Ph.D.  *Id.* at 141-142.  Mother testified as follows on inquiry by the trial court with respect to the time-periods that she was *not* in Berlin with Child.

[A]: Apart from the first semester when my mother and my nephew and [Father]'s niece were living with [Father] and a part of the summer of 2014 when I was here [in Pittsburgh] for six weeks[,] I did a couple of trips but none of them were longer than two weeks I believe.  So I went to Moscow I think twice for ten days.

THE COURT: By yourself?

[A]: Yeah, by myself because I needed to do my research.  That was for ten days and I went to a conference here [in Pittsburgh] . . . and I defended my prospectus in November, early December 2014.  But that was pretty much it.

*Id.* at 142.

- 11 -

*Id.* at 43-44.

Turning to the merits of Father's appeal,[8] we review his request that this Court reverse the custody order with respect to primary physical custody. We begin with his third issue, that the trial court erred in failing to recognize an alleged custody agreement between Father and Mother. Specifically, during the trial, Father alleged that the parties entered into an oral agreement in August of 2015, before Mother moved to Pittsburgh with Child, that Child would return to Germany for the 2016-2017 school year. N.T., 7/6/2017, at

_____

[8] Father's argument in his brief fails to comply with the Pennsylvania Rule of Appellate Procedure providing,

> The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part -- in distinctive type or in type of distinctively displayed -- the particular point treated therein, followed by such discussion and citation of the parties as are deemed pertinent.

Pa.R.A.P. 2119. Father's argument consists of 63 pages, and it is not divided into as many parts as there are questions to be argued. Furthermore, to the extent Father raises any argument that is not set forth in or suggested in the statement of questions involved in his brief, we do not consider it. Rule 2101 underscores the seriousness with which this Court takes deviations from the procedural rules, as it permits us to quash or dismiss an appeal for procedural noncompliance. Here, we address Father's appeal insofar as the Rules permit and as best we can discern them. ***See Krebs v. United Refining Company of Pennsylvania***, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's Statement of Questions Involved is deemed waived); ***see also*** Pa.R.A.P. 2116(a) (providing, "No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

3.  Further, Father asserts that the court erred in finding that the alleged agreement would not affect its determination of Child's best interests pursuant to Section 5328(a). Father's brief at 73. Father argues that the court showed partiality, prejudice, bias, and/or ill will against him during the trial by stating that this alleged agreement is, in fact, irrelevant to Child's best interests (his sixth issue). Father's brief at 81-82.

The trial court did not make a determination regarding whether the alleged custody agreement existed between the parties. In its Rule 1925(a) opinion, the court explained:

> [R]egardless of whether I f[ou]nd there was an agreement or not, I did not find, based on the testimony and the evidence[,] that such an arrangement was in the best interest of Child. The discussions the parties had before Mother and Child left Germany for Pittsburgh were relevant but not at all dispositive of the case. It is not that such an agreement has no weight[.] [I]t is simply one factor to be considered. Notably, the existence of an agreement regarding custody is not even mentioned as a statutory factor when determining a custody order.
>
> My job as trial judge in a custody matter is to determine the best custody arrangement for the subject child, not what is most fair for the parents. If the parties entered into a contract, it is not my job to enforce that contract. Instead, I am to decide what is in the best interest of the child.
>
> . . . Throughout this matter, Father has consistently argued that Mother has not behaved fairly toward him with regard to fulfilling her side of the agreement. Mother, for her part, spoke to what would be best [for] the Child. Father could not look past what he believed he was entitled to. Even at this stage, it is his outrage over the "agreement" not being enforced that makes up the majority of Father's arguments on appeal, not any reference to how my Order impacts Child.

- 13 -

> I did not find that the custody arrangement Father was proposing was in the best interest of Child for the reasons set forth in my Order. I did not find that switching homes and schools yearly was a feasible arrangement. Child has spent the majority of his life in the U.S. Nevertheless, my Order provided for substantial time in Germany with Father and afforded Father ample opportunity to take part in Child's life here in the U.S.

Trial Court Opinion, 9/29/2017, at 7-9. We discern no error by the trial court in its conclusion that the alleged custody agreement between the parties was not dispositive of Child's best interest in this case. Therefore, we reject Father's third and sixth issues wherein he argues that the court abused its discretion in failing to recognize the agreement in its consideration of the Section 5328(a) factors.

Returning to Father's first, fourth, and fifth issues on appeal, we review his arguments with respect to Section 5328(a). Contrary to Father's argument concerning Section 5328(a)(1), which party is more likely to encourage and permit frequent and continuing contact between the child and another party, the court found that it favored neither party. Father argues that this factor clearly favors him because Mother violated their alleged custody agreement, and she "offers absolutely no compromise regarding Child's possible return to Berlin, either by the original agreement or by Father's repeatedly proposed

shuttle custody solutions."[9]  Father's brief at 23.  As discussed above, because the custody agreement, if it existed, was not determinative of Child's best interest, we discern no abuse of discretion by the court with respect to Section 5328(a)(1) in this regard.

In addition, we conclude the court did not abuse its discretion pursuant to Section 5328(a)(1) in finding that, "both parents see the importance of [Child] continuing contact with the other and that neither party purposely engages in behavior to limit the other's contact.  Both parties, however, have engaged in behavior which does impact the other's ability to communicate with the non-custodial parent.  This behavior must stop."  Order, 8/2/2017, at 9.

Father asserted during the trial that Mother interferes with his communication with Child *via* Skype on weekday mornings by requiring him to use her iPhone instead of his computer.  Father asserted that Child's computer provides better sound quality.  In addition, Father asserted that Mother interferes with his conversations with Child.  In its Rule 1925(a) opinion, the trial court stated that it provided strategies in the subject order to address this behavior.  Indeed, the order includes a provision regarding the

_____

[9] Father testified that, during the course of the custody litigation in this case, he proposed to Mother a "shuttle" custody arrangement whereby they would alternate primary physical custody every two years.  N.T., 7/6/2017, at 236-237, 242.

parents' communication with Child *via* telephone or Skype including, but not limited to, directing that "Child is in an area where he can be clearly heard and seen during Skype calls." Order, 8/2/2017, at ¶ 1(H). As such, we will not disturb the court's determination in weighing Section 5328(a)(1) equally between the parties.

With respect to Section 5328(a)(3), the parental duties performed by each party on behalf of the child, Father argues that the evidence was insufficient to support the court's conclusion that this factor "slightly" favored Mother. The court reasoned that this factor only slightly favored Mother because there was "no evidence that Father would not be a competent caregiver for" Child. Order, 8/2/2017, at 9. Father baldly asserts, "It is not up to the [t]rial [c]ourt to determine how to weigh the factors unless the factor is tied in some way to the child's safety." Father's brief at 29. We disagree. Section 5328(a) requires that courts give weighted consideration to those factors which affect the safety of the child; however, in considering all of the relevant statutory factors for the purpose of determining the child's best interests, courts must necessarily weigh the factors between the parties, as the trial court did here.

In its Rule 1925(a) opinion, the court stated that Mother has been the primary caregiver of Child throughout his life because he has always lived with her. Trial Court Opinion, 9/29/2017, at 5. Father argues that the court did

not consider the testimonial evidence that there were periods of time between August of 2013, and August 2015, as discussed above, when Mother was separated from Child, leaving him as the primary caretaker. He asserts that Mother has only been the primary caregiver since August of 2015, when she relocated with Child to Pittsburgh. Upon review of the testimonial evidence, we discern no abuse of discretion by the court in determining that this factor slightly favors Mother.

With respect to Section 5328(a)(4) (also identified as issue four), the need for stability and continuity in the child's education, family life, and community life, Father argues that he continues to live in the same residence where Child previously resided in Berlin. He speculates, "Mother is unlikely to remain in Pittsburgh" as she will be finishing "graduate school" in the coming year. Father's brief at 35. As such, Father argues that the court erred in finding that this factor favors Mother. Father's argument fails. It is well-established that a court may not rely on speculative future events in making a custody determination. **See Haraschak v. Haraschak**, 407 A.2d 886, 888 (Pa. Super. 1979). Therefore, in considering Section 5328(a)(4), we conclude that the trial court properly did not speculate about whether Mother would relocate after completing her Ph.D. program.

Father argues that the court abused its discretion with respect to Section 5328(a)(5), the availability of extended family, because Child's extended

family members live closer to Berlin than they do to Pittsburgh. The trial court found that this factor was "not an issue in this case as neither Mother nor Father have extended family in the vicinities of their homes." Order, 8/2/2017, at 10. Father asserts that he has extended family in Oklahoma and Texas, which are a distance of approximately 1000 miles from Pittsburgh. Father's brief at 39. In Berlin, Father asserts that he has two cousins who live two and a half hours away. Further, he asserts that Child's maternal grandparents and maternal uncle reside in the Ukraine, and, therefore, they are closer to Berlin than to Pittsburgh. He asserts that Child's maternal grandparents "are unlikely to ever travel to the USA, but they have already traveled to Berlin." *Id.* at 40. Further, he states, "Every single member of Mother's family has visited the Child in Berlin. . . . Only one member of Mother's family has ever visited the Child in Pittsburgh." *Id.* Upon review, we discern no abuse of discretion by the court in concluding that this factor is not an issue. Indeed, there is no evidence that any of Child's extended family members lives close enough to either location to have a significant role in his life.

Father argues that the court abused its discretion with respect to Section 5328(a)(7), the well-reasoned preference of the child, based on the child's maturity and judgment. Child was nine years old at the time of his *in camera* interview. The court found as follows.

- 18 -

> [Child] is young[,] but he is extremely intelligent and articulate. [Child] reasonably expressed his preference to be with his [m]other, and this [c]ourt finds this preference is influenced by his desire to continue in the school he is comfortable with and in the routines he is comfortable with during the school year, and not due to whim or to parental influence. [Child] also expressed his love for his [f]ather and his desire to spend time with his [f]ather. This [o]rder provides substantial time with Father so that the relationship between them can be sustained and grow.

Order, 8/2/2017, at 10.

Father argues that Child's preference to remain with Mother is not "well-reasoned." He speculates that Mother has influenced Child's preference. For instance, Father baldly asserts that the court "failed to develop the record, especially in ignoring the effects of Mother's threatening behavior toward [Child's] stated preference." *Id.* His argument is without merit.

Father's argument is based on anonymous allegations about Mother made to Children, Youth and Families ("CYF"). On August 11, 2017, during the hearing on Father's motion for reconsideration, the court informed Father that it received a copy of the report with the allegations first made to CYF in May of 2017.[10] N.T., 8/11/2017, at 15, 17. The court stated that the report

---

[10] It is not clear from the record when the court received the facsimile and who sent it. *See* N.T., 8/11/2017, at 16. The court explained to Father, "We have a procedure when a person files a motion, when they are not represented[,] that their screening department screens it for [CYF] interventions to see if we have a dangerous situation." *Id.* at 17.

alleged that Child is afraid of Mother, that "she throws things when she is angry[,] and he described an incident when [she] threw a chair."[11] *Id.* at 17. The court concluded on the record and in open court, "[CYF] did not think it was important enough to go out and visit. I got no indication of any abuse when I talked to [Child] except that you guys do yell at each other. He did not indicate any fear or anxiety around his mother." *Id.*

Father specifically asserts that the court abused its discretion "by failing to make this information known at or before the trial, because this information is highly relevant as to the question of Mother's influence on [Child's] opinion." Father's brief at 42. We disagree. Indeed, there is no indication that the court had this information at the time of the subject proceedings, on July 5 and 6, 2017. Further, there is no indication that the allegations were relevant to Child's stated preference pursuant to Section 5328(a)(7).

In addition, Father asserts Child's preference is not "well-reasoned" by again speculating that Mother will have to relocate after she completes her Ph.D. program. He baldly asserts,

> [Child] does not appreciate that his aversion to change now (a possible return to Berlin) actually means a greater risk of requiring adaptation to *two* new schools if Mother accepts a temporary position for 2018. There is a significant possibility of this, rather

---

[11] Importantly, in this case, the court stated, "There was no indication that [Child] had been injured, given [that] the referral was screened out without further [CYF] intervention." N.T., 8/11/2017, at 15.

> than Mother being assured of a permanent (or tenure-track) position next summer. It is just as likely that Mother has to accept a 1 or 2 year postdoctoral appointment.

Father's brief at 46 (emphasis in original). As discussed above, in considering the best interest factors, to the extent that the court did not speculate regarding whether Mother will relocate after obtaining her Ph.D., the court did not err. **See Haraschak**, **supra**. Upon careful review, we conclude that the court did not abuse its discretion in finding that Child's preference was well-reasoned and was not the result of a whim or parental influence.

Father argues that the court abused its discretion with respect to Section 5328(a)(9), which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs, and Section 5328(a)(10), which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs. Father argues it was unreasonable for the court to find that he is any less likely than Mother to satisfy Child's needs. The court found with respect to both factors:

> [B]oth parents are loving and nurturing toward [Child] and both will attend to his needs. Of the two parents, however, this [c]ourt finds that Mother is more likely to put the needs of [Child] first before her own than is Father. This is evidenced by Father's inability or refusal to provide Mother and [Child] with clear information about his arrival for visits to Pittsburgh and whether or not he would permit [Child] to participate in activities which were already planned for him. It is also evidenced by Father's focus on whether or not the [c]ourt's decision would be fair to him, as opposed to being what is best for [Child].

Order, 8/2/2017, at 11.  In its Rule 1925(a) opinion, the court reiterated:

Mother is more likely to put Child's needs before her own than is Father.  Nowhere is this more clearly evidenced than by Father's continuing focus - throughout the trial and on appeal - on whether or not the [c]ourt's decision would be fair to him and whether the terms of his alleged agreement with Mother would be honored, as opposed to being what is best for Child.  Conversely, Mother's correspondences with Father as well as the evidence she proffered in court focused at all time[s] on the Child's well-being.

Trial Court Opinion, 9/29/2017, at 6-7.  Upon thorough review, the evidence supports the court's findings.  As such, we reject Father's assertions, all of which essentially request this Court to re-weigh the evidence and make its own independent determinations.  *See A.V.*, *supra* at 820 (stating, "[t]he parties cannot dictate the amount of weight the trial court places on the evidence").  We discern no abuse of discretion by the court pursuant to Section 5328(a)(9) and (10).

Father argues that the trial court abused its discretion with respect to Section 5328(a)(12), each party's availability to care for the child or ability to make appropriate child-care arrangements.  The court found, "Mother is more consistently available for [Child] as her schedule is more flexible than Father's.  Father has indicated that his schedule can be made more flexible[,] but I did not find that testimony to be credible."  Order, 8/2/2017, at 11.  In its Rule 1925(a) opinion, the court clarified, "Father testified that his schedule can be made more flexible but I did not find that testimony to be especially persuasive

- 22 -

as there was also evidence that [F]ather often worked long days." Trial Court Opinion, 9/29/2017, at 7.

Father asserts he was the sole financial provider for the family, which required him to work long days.[12] Therefore, he argues that it is unreasonable for the court to find that Section 5328(a)(12) favors Mother. Further, he argues that the court abused its discretion in finding not credible his testimony that his work schedule can be more flexible.

As best we can discern, Father is a European patent attorney. N.T., 7/6/2017, at 84-85. Frank Steinbach, the partner in the patent law firm where Father is employed, testified that Father may be permitted to work from home up to three days per week. *Id.* at 86-87. Father testified that he "generally go[es] to the office to work." *Id.* at 220. He explained that he likes to have lunch with his colleagues, and that "they want me in the office, because I think I help with English once in a while." *Id.* For instance, he testified, "the staff will have a letter they're sending to a client, and they're worried about how they're phrasing. And they'll come and ask me. . . . And they'll . . . ask me about US patent law[,] and I took the exam in 2008." *Id.* The court found Father's testimony not credible that he would exercise a more flexible work

---

[12] Mother testified that Father currently pays an agreed-upon child support payment of approximately three hundred eighty euros per month. N.T., 7/5/2017, at 176.

schedule if he was awarded primary physical custody, and we will not disturb its finding. ***See A.V.***, ***supra*** (citation omitted) (stating, "[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses").

In addition, Father asserts with respect to Section 5328(a)(12) that the court disregarded his ability to make appropriate child-care arrangements. The court does not indicate in its order or Rule 1925(a) opinion that it considered the ability of the parties to make appropriate child-care arrangements. Upon review, the ability of the parties to make such arrangements was not an issue during the trial. To the extent that the court omitted this consideration, we conclude it is harmless under the circumstances of this case. Thus, we will not disturb the weight the court placed on this factor.

Finally, Father argues that the court abused its discretion with respect to Section 5328(a)(13), the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. The court found, "the parents have been unwilling and/or unable to cooperate with one another. Blame can be assigned to both parties for this conflict. This factor, however, favors Mother as it has been Father who has been more rigid and uncooperative and who has created a sense of instability when visits were

being planned." Order, 8/2/2017, at 11. In its Rule 1925(a) opinion, the court further stated, "Evidence was presented which demonstrated Father was overly concerned with getting what he felt he was entitled to as opposed to reaching a decision which would be best for Child." Trial Court Opinion, 9/29/2017, at 7.

The record supports the court's findings insofar as Mother testified with respect to e-mails from Father regarding his visit to Pittsburgh in July of 2016. She testified as follows.

> I included this sequence of e-mails because I hope to show how difficult it is to organize anything with [Father]. He would say one thing in one e-mail, then a different thing in another e-mail and one e-mail he agrees to taking [Child] to swimming practices and camps and another he's saying he's not sure he will do it, in another he is saying he will not do it. And that is why there is constant uncertainty that is created for [Child], for myself, we don't know what is going to happen, what [Father] at [the] next moment will decide to do and what he actually will do.

N.T., 7/5/2017, at 50. In addition, as discussed above, the testimonial evidence reveals that Father is not willing to cooperate with Mother with respect to a custody arrangement that would serve Child's best interests. He simply insists that she agreed to the alleged custody agreement where Child would return to Germany for the 2016-2017 school year.

Contrary to the court's finding, Father asserts, "There is abundant e[-]mail evidence and testimony to support that actually Mother is rigid and uncooperative." Father's brief at 63 (emphasis in original) (citations to record

omitted). Father cites his testimony that Mother did not inform him that Child was no longer playing soccer or about his doctor appointments. *See* N.T., 7/6/2017, at 171. We reject Father's assertion to the extent that the court made credibility findings in favor of Mother and against him. *See A.V.*, *supra*. Further, we reject Father's assertion with respect to "abundant e[-]mail evidence." As discussed above, there are no e-mails included in the certified record. Therefore, we do not consider them.[13] *See Commonwealth v. Preston*, *supra* at 6. We discern no abuse of discretion by the court with respect to Section 5328(a)(13). Because the record evidence supports the trial court's findings with respect to Section 5328(a)(1), (3), (4), (5), (7), (9), (10), (12), and (13), Father's first, fourth, and fifth issues on appeal fail.

In his second issue, Father argues that the court abused its discretion in awarding Mother sole legal custody for educational decisions. His fifth issue is related insofar as he argues that the court had a capricious disbelief of the evidence. In his brief, Father fails to provide meaningful discussion with citation to relevant legal authority. Therefore, we conclude that Father has waived this issue. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011)

---

[13] By order dated January 19, 2018, pursuant to Father's request, the trial court directed the Allegheny County Department of Court Records to transmit a flash drive that contains Father's trial exhibits to this Court as a supplement to the record. We have reviewed the flash drive, and it does not contain any e-mail evidence. In fact, the flash drive contains only photographs.

(stating that issues are waived if appellate brief fails to provide meaningful discussion with citation to relevant authority); **see also** Pa.R.A.P. 2119(b). Even if this issue were not waived, we would conclude that the trial court did not abuse its discretion based on the court's finding, as discussed above, that Father has been rigid and uncooperative with Mother. Indeed, the record supports the court's finding that, with respect to custody, Father "has consistently argued that Mother has not behaved fairly toward him with regard to fulfilling her side of the agreement. . . . Father could not look past what he believed he was entitled to." Trial Court Opinion, 9/29/2017, at 8. As such, based on the totality of the evidence, we would conclude that the court did not abuse its discretion in determining that granting Mother sole legal custody with respect to educational decisions was in Child's best interest.

We discern no abuse of discretion by the trial court in fashioning the subject custody order. The court carefully and thoroughly considered the best interest factors in light of the testimonial evidence. The court aptly explained in its Rule 1925(a) opinion:

> Contrary to Father's assertions that I was biased against him or that he suffered prejudice as an "overseas father," I based my decision on the evidence that was presented to me as well as the demeanor of the parties. I placed great weight on the well-reasoned preference as expressed by Child.
>
> Father argues that I failed to apply fundamental principles of custody law by not providing each parent with meaningful custody. To the contrary, because I did find that the relationship between Father and Child is an important one, I provided Father

with very meaningful custody time in Germany including summers, holidays, and substantial partial custody in the U.S.

Trial Court Opinion, 9/29/2017, at 9. Because the evidence of record supports the trial court's findings, we affirm.

Order affirmed. Motion to supplement the certified record denied.[14]

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/20/2018

_____

[14] On January 22, 2018, Father filed a motion in this Court to supplement the certified record wherein he asserts that, because he resides in Berlin, Germany and is acting *pro se*, he is "unable to verify the contents of the flash drive or of the certified record . . . other than the transcripts and docket entries. . . ." Motion, 1/22/2018, at 3. Father requests, if the exhibits referred to in his brief are not included on the flash drive, discussed in n. 2, *supra*, then this Court direct the trial court to supplement the record pursuant to Pa.R.A.P. 1926(b)(1) (emphasis added) (providing, "[i]f anything material to a party is omitted from the record by error, breakdown in processes by the court, . . . the omission . . . **may** be corrected by the following means: (1) by the trial court or the appellate court upon application or on its own initiative at any time. . . ."). In **Commonwealth v. Preston**, **supra** at 7, we stated that Rule 1926(b)(1) "does not alter the fact that the ultimate responsibility of ensuring that the transmitted record is complete rests squarely upon the appellant and not upon the appellate courts." Moreover, based on our disposition in this case, to the extent that e-mails and any other documentary evidence were referred to in Father's brief and are not included in the certified record, that evidence was not necessary for our meaningful review of this case. Therefore, we deny Father's motion.