J-S40045-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| E.J. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| B.W. | : | No. 636 WDA 2019 |

Appeal from the Order Entered April 8, 2019
In the Court of Common Pleas of Blair County Civil Division at No(s):
2017 GN 513

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:                **FILED SEPTEMBER 13, 2019**

E.J. (Mother) appeals from the order entered by the Court of Common Pleas of Blair County (trial court) awarding Mother and B.W. (Father) shared legal and physical custody with respect to their daughter, C.E.J. (Child).  Upon careful review, we affirm.

The certified record reveals the following factual and procedural history. Mother and Father began their relationship while at Pennsylvania State University.  Mother learned she was pregnant with Child in May 2016. Thereafter, in September 2016, Father left to obtain his Master's degree in England.  In November 2016, the relationship ended.  Child was born January 2017.  Father was present for the birth and then returned to England to complete his studies.  Accordingly, Mother cared for Child at her parents' home in Altoona, Pennsylvania.

_____
* Retired Senior Judge assigned to the Superior Court.

On February 16, 2017, Mother filed a complaint for custody. On April 10, 2017, Father filed an answer to Mother's complaint and a counterclaim for partial physical custody. In October 2017, Mother and Father agreed to a temporary consent order providing the parties shared legal custody, Mother primary physical custody, and Father partial physical custody for three hours each Saturday at Mother's residence. On February 2, 2018, the parties reached an agreed custody order, expanding Father's partial physical custody to eight hours every other Saturday from February 10, 2018, to May 1, 2018, and, thereafter, every other weekend from Friday at 5:00 p.m. to Sunday at 5:00 p.m. The order also scheduled a review hearing for November 9, 2018.

**I.**

Before we begin, to better understand what follows, it is worthwhile to set forth the well-settled law regarding custody disputes. The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well[-]being." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006), *citing* *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004).

The Child Custody Act, 23 Pa.C.S, §§ 5321-5340, governs child custody actions. Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S. § 5338. Section 5328(a) sets forth the best interest factors that the

trial court must consider.[1]  ***See E.D. v. M.P.***, 33 A.3d 73, 80-81, n.2 (Pa.

Super. 2011).  Trial courts are required to consider "**[a]ll** of the factors listed

in section 5328(a) . . . when entering a custody order." ***J.R.M. v. J.E.A.***, 33

A.3d 647, 652 (Pa. Super. 2011) (emphasis in original); ***see also A.V. v.***

***S.T.***, 87 A.3d 818, 823 (Pa. Super. 2014) (providing that trial courts shall set

forth the mandatory assessment of the Section 5328(a) best interest factors

"prior to the deadline by which a litigant must file a notice of appeal") (citation

omitted).  This statutory section provides as follows.

### § 5328.  Factors to consider when awarding custody

**(a) Factors.**—In ordering any form of custody, the court shall
determine the best interest of the child by considering all relevant
factors, giving weighted consideration to those factors which
affect the safety of the child, including the following:

---

[1] Our standard of review in child custody cases is as follows.

In reviewing a custody order, our scope is of the broadest type
and our standard is abuse of discretion.  We must accept findings
of the trial court that are supported by competent evidence of
record, as our role does not include making independent factual
determinations.  In addition, with regard to issues of credibility
and weight of the evidence, we must defer to the presiding trial
judge who viewed and assessed the witnesses first-hand.
However, we are not bound by the trial court's deductions or
inferences from its factual findings.  Ultimately, the test is whether
the trial court's conclusions are unreasonable as shown by the
evidence of record.  We may reject the conclusions of the trial
court only if they involve an error of law, or are unreasonable in
light of the sustainable findings of the trial court.

***V.B. v. J.E.B.***, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

(1)    Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2)    The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3)    The parental duties performed by each party on behalf of the child.

4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328.

With respect to the trial court's analysis of the factors:

The Custody Act requires only that the trial court articulate the reasons for its custody decision in open court or in a written opinion or order taking into consideration the enumerated factors. 23 Pa.C.S.A. §§ 5323(d), 5328(a). Contrary to Mother's argument, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations.

*M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013).

## II.

On November 9, 2018, and March 15, 2019, the trial court conducted the custody review hearing. Mother testified and presented the testimony of Child's maternal grandfather, as well as Lawanda Barnett, Child's therapist. Father testified and presented the testimony of Child's paternal grandmother.

On April 9, 2019, the trial court entered its custody order, providing Mother and Father shared legal custody, as well as shared physical custody

on a week on/week off basis. On April 24, 2019, Mother timely filed a notice of appeal.[2] On May 7, 2019, the trial court filed its Rule 1925(a) opinion.

### III.

On appeal, Mother argues that the trial court abused its discretion by ordering a "true shared 50/50" custody schedule because it is not in the best interests of Child. Mother's brief at 2. In arriving at that determination, she contends that the trial court improperly considered the best interest of Father rather than the best interests of Child. *Id.* at 7-8. Mother also contends that the trial court erred in its consideration of best interest factors 3, 9 and 10, and failed to appropriately consider the 2½ hour driving distance between the parties. *Id.* at 7-9. Mother further argues that the court did not consider Father's current capabilities but rather focused on his future ability to parent. *Id.* at 8-9. Mother questions Father's ability to provide appropriate care for Child when she is in his care. *Id.* at 7-9. Mother similarly focuses on her

---

[2] Mother did not concurrently file a concise statement of errors complained of on appeal with the notice of appeal in contravention of Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court ordered Mother to file her Rule 1925(b) statement and Mother timely complied. Father asserts no prejudice, nor are we aware of any, arising from Mother's failure to file concurrently the concise statement with the notice of appeal. Therefore, we will not quash or dismiss Mother's appeal. *See In re K.T.E.L.*, 983 A.2d 745 (Pa. Super. 2009); *Cf. J.P. v. S.P.*, 991 A.2d 904, 908 (Pa. Super. 2010) (holding that appellant waived all issues by failing to file a concise statement of errors complained of on appeal when directed by the trial court).

historical role as Child's primary caregiver,[3] contending the court ignored "Mother's fundamental r[o]le as primary caretaker in this case. . . ." *Id.* Further, Mother asserts that the court ignored that Mother is available around the clock because she does not work, while Father is unavailable during the day when he is at work. *Id.* Moreover, Mother contends that the court ignored Father's lack of participation following the parties' separation, moved Child into a shared physical custody schedule too quickly, and failed to account for Child's eventual enrollment in school. *Id.* at 10-11.

In its 29-page opinion, the trial court considered the testimony offered at the hearing and comprehensively addressed all of the best interest factors pursuant to Section 5328(a).[4] As it relates to Mother's issues on appeal, the court made the following findings:

---

[3] This Court has noted that while the primary caretaker doctrine is no longer viable, a court may still consider a parent's role as primary caretaker in its consideration of the custody factors.

> We hasten to add that this conclusion does not mean that a trial court cannot consider a parent's role as the primary caretaker when engaging in the statutorily-guided inquiry. As discussed above, a trial court will necessarily consider a parent's status as a primary caretaker implicitly as it considers the [S]ection 5328(a) factors, and to the extent the trial court finds it necessary to explicitly consider one parent's role as the primary caretaker, it is free to do so under subsection (a)(16).

*M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013).

[4] The court did not specifically address factor 2.1. However, this factor is not applicable. *See* N.T., 11/9/18, at 80.

**[Factor 3] The parental duties performed by each party on behalf of the child.**

The evidence has established that Mother has been the primary caregiver in all aspects of [Child] since her birth. Having said that, there is no doubt that the gradual nature of the custody process over the last two plus years contributed to this situation.

Mother also acknowledged that the parties initially agreed for Father to go to school in England. The evidence has also shown that Father has performed day[-]to[-]day parenting duties such as feeding, clothing, teaching, playing and caring for [Child] during his periods of custody. So, while this factor favored Mother on its face, we find that Father is capable of performing all parenting duties and his desire to father [Child] in all aspects of her life to be sincere. A shared custody schedule provides [Child] with the opportunities for equal love and support from both parents.

***

**[Factor 9] Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.**

We believe that both Mother and Father have and are capable in the future of maintaining a loving, stable, consistent and nurturing relationship with [Child] adequate for her emotional needs. Further, as mentioned previously, to the extent that [Child] needs therapeutic intervention, our Order directs the parents to explore and engage in same.

**[Factor 10] Which party is more likely to attend to the daily, physical, emotional, developmental, educational and special needs of the child.**
We find that each parent has m[]et [Child]'s needs during the time when [Child] is with hi[m]/her. While we recognize that Father was not present in the United States until [Child] was several months old and that Mother was the primary caregiver up to that time, we also acknowledge the court record wherein Father's attempts to establish a relationship with [Child] on a regular basis were met with resistance. Luckily, [Child] is still very young and the parties are already establishing a track record of cooperation to maintain healthy bonds for [Child] with both parents.

> Additionally, the record is devoid of any reason that this would not continue under a 50/50 custody schedule. Of course, the parties will need to cooperate to an even greater extent when arranging for such things as doctor appointments for [Child], as her established medical doctor is in the Altoona area.

Trial Court Opinion, 4/9/19, at 24, 26.[5]

Moreover, in its Rule 1925(a) opinion, the court further explained its

reasoning as follows:

> It is clear from the record that while Mother had functioned as the primary caregiver, Father's efforts to have an equal role were met throughout [Child]'s life with opposition by Mother, requiring the [c]ourt's intervention and this lengthy custody process. Mother's role as primary caretaker was historical and one that she advocated and also resisted changing to Father's detriment. Father was capable of performing and had performed all parental responsibilities when [Child] was in his care. Finally, the parties are similarly situated in almost every single way.[6]
>
> ***
>
> Appellant appears to argue that simply because the [c]ourt found that each parent is capable of equally providing for [Child], that somehow that conclusion meant that Mother should be awarded primary custody. This [c]ourt refuses to conclude that when, as the record established here, both parents are capable of caring for their child and similarly situated in almost every aspect of their life[,] that such a situation would not favor an equal schedule for [Child] with each parent, absent safety considerations.

---

[5] The court determined that the remaining factors were either inapplicable or did not weigh in favor of either party.

[6] The trial court also noted "that his doctrine [of tender years] created a presumption in favor of mother. The tender years presumption that custody of a young child should be awarded to the mother has been abolished and there is no maternal right to custody as against the father. ***Haraschak v Haraschak***, 407 A.2d 886, 889 (Pa.Super. 1979). Trial Court Opinion, 4/9/19, at 20.

***

> Finally, with regard to Appellant's claim that the Order should have addressed the [c]hild's elementary school schedule, this [c]ourt cannot predict what developments may influence the analysis of the custody factors at some point (possibly four (4) years) from now when [Child] is set to begin primary school. Every custody order is entered with the knowledge that circumstances may change. (For example, the parties may move closer to each other).

Trial Court Opinion, 5/7/19, at 5-7.

Our review of the record supports the trial court's determination. Mother testified that she resides in Altoona, Pennsylvania with her parents. N.T., 11/9/18, at 9. She acknowledged that when Father returned from England, he immediately sought shared physical custody. *Id.* at 16. However, she did not agree because Child was "breast-feeding, she wouldn't take a bottle, he was a stranger for her . . . ." *Id.* Mother testified that while Father sought shared physical custody, she believed that Thursday through Sunday every other weekend, as well as an additional weekend per month, was a more appropriate schedule. *Id.* at 21. Mother calculated this as 11 overnights per month. *Id.* at 41. Mother proposed the schedule because she does not work and Father works during the day. *Id.* at 24-25.

Mother contended she did not know the type of relationship Father had with Child, but assumed "he takes over the role as a caretaker to her." *Id.* at 25-26. Mother testified that she believed Father could appropriately provide day-to-day care for Child. *Id.* at 43. Mother also acknowledged that Mother and Father have similar living conditions, with the main difference being that

- 10 -

Father works and she does not, as well as the fact that she spent the first 22 months as Child's primary caregiver.[7] *Id.* at 50-51, 70-71.

Father testified that he resides in Camp Hill, Pennsylvania with his parents. N.T., 3/15/19, at 9. He works in sales and, although his schedule is flexible, he generally works between eight and nine hours per day. *Id.* at 10-11. Father testified that starting in May 2018, he had custody of Child on alternating weekends. *Id.* at 23. During their time together, Father reads with Child, helps Child work on learning the alphabet and numbers, and spends time with Child's extended family. *Id.* at 36-37. During Father's time with Child, he provides the care for Child. *Id.* at 29-30. Father further testified that to the extent that Father had custody of Child while he was working, Child's paternal grandmother would watch her. *Id.* at 34. However, Father's schedule would allow him to wake Child up, feed her and return in time to feed Child dinner and spend quality time with Child before bedtime. *Id.* at 36.

Ultimately, Mother's challenges go to the trial court's conclusions and assessments and ask this Court to re-find facts, re-weigh evidence and/or re-assess credibility to her view of the evidence. Under the standard of review

_____

[7] Near the end of the hearing on November 9, 2018, upon inquiry from the court, Mother testified that there was a disagreement regarding religion between Mother and Father and that Child had not been baptized. N.T., 11/9/18, at 77. At the start of the second day of the hearing, Mother acknowledged this testimony was untruthful, as Child was baptized in June 2018, and she did not inform Father. N.T., 3/15/19, at 2-3.

applicable in custody matters, we are not permitted to disturb the trial court's findings of fact and determinations regarding credibility and weight of the evidence absent an abuse of discretion. *See C.R.F.*, 45 A.3d at 443; *see also E.R.*, 129 A.3d at 527. As we stated in *Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (*quoting Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)):

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

Moreover, it is not our function to determine whether the trial court reached the "right" decision; rather, we must consider whether, "based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion. . . ." *Hanson v. Hanson*, 878 A.2d 127, 129 (Pa. Super. 2005).

Initially, it is apparent that the trial court focused on crafting a custody order that served Child's, rather than either parent's, best interests. Further, it was the trial court's responsibility to make credibility and weight determinations, and we find that the court did not err or abuse its discretion in its decision. The trial court adequately and appropriately analyzed the best interest factors pursuant to Section 5328(a), and, after careful review of the

record, we determine that the trial court's findings and determinations are supported by competent evidence in the record.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  9/13/2019